# THE STATE OF IOWA v. TWEEDY.

1. SECOND TRIAL: ACQUITTAL. The defendant was indicted for murder in the second degree and was tried and convicted of manslaughter. On appeal to the Supreme Court the judgment was reversed and the cause was remanded. *Held*, that the conviction of manslaughter was an acquittal on the charge of murder in the second degree, and that the defendant could not be again placed on trial upon that charge.

2. SAME. When the defendant was placed upon trial the second time upon a charge of murder in the second degree, having been once acquitted, and was convicted of manslaughter, it was held that the Supreme Court will not presume that he was not prejudiced by evidence received and instructions given touching the charge of murder.

3. DECLARATIONS IN EXTREMIS: WRITTEN AND PAROL. When declarations *in extremis* are reduced to writing and signed by the person making them, the writing, if in existence, must be produced as evidence of such declarations; but when the writing contained only the oral statements of the party making the declarations, parol evidence of such statement may be received after the absence of the writing is accounted for.

4. SAME. When declarations *in extremis* are made at different times, one of which is reduced to writing, and they cover different grounds and refer to different matters, both may be admitted in evidence.

5. INSTRUCTIONS. A judgment will not be reversed because instruc-

tions given by the court to the jury, which were correct as abstract propositions, should have been modified under the circumstances of the case, when it appears that appellant did not ask for any such modification.

*Appeal from Van Buren District Court.*

WEDNESDAY, DECEMBER 26.

INDICTMENT for murder in the second degree. Defendant was tried, found guilty of manslaughter, and appealed to this court. The cause was reversed and remanded, and upon a second trial he was found guilty of the same offense, from which he again appeals. For the facts, and errors assigned, see the opinion.

*Rankin & Miller* and *J. C. Hall* for the appellant.

I. The court erred in refusing to give the following instruction asked by plaintiff: "The defendant Andrew Tweedy, stands indicted for murder in the second degree, but inasmuch as he has once been tried and acquitted of murder in that degree, he can only now be tried for manslaughter, and the jury can only consider this case as a charge of manslaughter." *The People* v. *Gilmore*, 4 Calf. 376; *Hart* v. *The State*, 25 Miss. 378; *The State* v. *Slaughter*, 6 Humph. 410.

II. The court erred in giving without modification the following instructions: "If two men fight on a sudden without forethought, and one in hot blood kill the other, it is manslaughter." Fighting is not always voluntary, and the court should have instructed the jury as to killing in self-defense. Whar. Am. Cr. L. 939; *The State* v. *Yarborough*, 1 Hawkes 260.

III. The court erred in admitting two setts of dying declarations, one in parol and the other in writing. Whar. Am. L. Cr. L. (4th ed.) par. 679; referring to Vin. Abr. 39; 1 Greenl. Ev. 161; *Rex* v. *Reason, et al*, 1 Str. 499; 1 Chit. Cr. Law 463, (margin. 569;) *The State* v. *Cameron*, 2 Chand.

(Wis.) 172. The American authorities are uniform on the subject.

*S. A. Rice*, Attorney General, for the State.

I. What evidence may have been produced in order to satisfy the couit that the declarations of the deceased, both oral and written, should be admitted, does not appear of record. These facts being addressed to the court, and there being nothing showing any error, the ruling below will be affirmed. 1 Greenl. Ev. sec. 160; 2 Starkie Ev. 262.

As to the propriety of admitting both the oral and written declarations, see 1 Greenl. Ev. section 161, *Rex* v. *Gray*, 7 C. & R. 230; 2 Starkie Ev. 262.

II.. The court did not err in refusing to instruct the jury that the former conviction of manslaughter was an acquittal as to murder in the second degree, and that the defendant could be tried only for manslaughter. *United States* v. *Harding*, 1 Wallace Jr. 147; Wheat. Am. Cr. L. 251; *Morris* v. *The State*, 1 Blackf. 37; *The State* v. *Stanton*, 1 Ire. 424; 2 Hill S. C. 239; *People* v. *Morrison*, 1 Park. 625.

III. Conceding that the instruction should have been given, the refusal to give it was an error of which the defendant can not complain, as he was not thereby prejudiced. 1 Arch. Cr. Pr. & Pl. 173; 1 Chit. Cr. L. 638; *Slaughter* v. *The State*, 6 Humph. 414.

WRIGHT, J.—The points relied upon by counsel to reverse this case will be noticed in their order.

The defendant asked the court to instruct the jury, "That inasmuch as he has once been tried and acquitted of murder in the second degree, he can only now be tried for manslaughter, and the jury can only consider this case as a charge of manslaughter;" which instruction was refused.

The question here made involves an inquiry into the effect of the first verdict and the subsequent reversal of the judgment thereon. For the defendant it is claimed that the

legal effect of the first verdict was a finding of "not guilty" as to the crime of murder in the second degree, and that he could not again be put upon his trial therefor.   This is denied by the State, it being further insisted, however, that as defendant was on the second trial found guilty: of manslaughter, the refusal worked him no prejudice, and he can not therefore complain.

Our law provides that in criminal cases, the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment.   (Code, section 3039.)   Under this indictment, therefore, the jury could properly find the prisoner guilty of manslaughter.   This was the finding on the first trial, but the verdict was silent as to the charge made.   On a second trial could he be tried for murder in the second degree?

Upon this subject the authorities are not uniform; but we are inclined to the opinion, and so hold, that upon principle, as well as the weight of authority, he could not be thus tried.

The language of our constitution (sections 12, Art. 1,) is, "No person shall, after acquittal, be tried for the same offense."   If after a verdict of manslaughter, under 'an indictment for murder in the second degree, the prisoner can be again tried for the higher offense, we do not see why this would not be trying him for an offense of which he had been acquitted.   To this, it is no satisfactory answer to say that the verdict was silent and did not acquit him in words of the higher offense.   But what, we ask, is its meaning, its import, its effect?   What did the jury mean?   Did not the court understand, and did not every reasonable mind understand when that verdict was rendered, that the prisoner was acquitted of the offense of murder in the second degree?   Did not the jury so intend and so say by their verdict, just as clearly as if in words they had so expressed it?   Sup-

pose the verdict had remained undisturbed, could not the prisoner have successfully pleaded it in bar of a second prosecution for the same offense? If so, why? Because the verdict *in words* found him "not guilty"? Certainly not, but because the verdict as found, necessarily and from its very terms, included an acquittal of the higher offense.

When the prisoner moved for a new trial and appealed to this court, he sought to be relieved of a judgment against him of manslaughter. We had no complaint to make that the jury had not convicted him of the offense of murder. If, however, he might properly be subjected to a second trial for murder, then he is compelled to submit to a verdict which he may deem ever so erroneous, lest by disturbing it, when insisting on his legal rights, he may place himself again in jeopardy. When a jury has once returned a verdict of "guilty" as to the lower offense, the prisoner should not, in our opinion, be placed in a position of additional hazard by attempting to be relieved of the erroneous judgment. It is settled upon authority that if he obtains a new trial he may be again tried for the offense of which he was convicted. It is a very different thing, however, when it is sought to try him for an offense of which he was not convicted, and which was not necessarily in the verdict of guilty.

In answering the objection on the part of the prosecution, that a new trial should not be given a prisoner, because he could not, (under the authority of *United States* v. *Gilbert,* 2 Sumner 37,) be again put in jeopardy, McLEAN, J., uses the following pointed argument: "The prisoner is found guilty by the jury, and whether right or wrong, must stand convicted. He claims under the constitution, a fair and impartial trial, and he shows gross prejudice against him by the jury, who have convicted on testimony wholly insufficient; but he is answered that the constitution protects him from being put in jeopardy a second time for the same offense and that a new trial would violate this provision. In

other words, the constitution guaranties the right of being hung, to protect him from the danger of a second trial. Whatever may be said theoretically of this constitutional protection, practically the subject of it can have no very strong reason to appreciate it." (*United States* v. *Keen*, 1 McLean 439.) So in this case, the rule is not very humane, to say the least of it, which says to the prisoner, you must abide the verdict, however unjust or erroneous, or if you do not we will give you a new trial and re-try you for an offense of which the jury have acquitted you.

SCOTT, J. in the case of *State* v. *Ross*, 29 Mo. 32, in a dissenting opinion, bases his opposition to the views above expressed primarily upon the ground, that if the verdict and reversal is to have the effect claimed, "then there is no charge on the second trial on which the accused can be tried." And he asks, "Being acquitted of the greater, which includes all the less offenses, how can he be tried for any of them? What is there on which the party can be arraigned? And again he says, "A verdict is necessarily an entirety and must all stand or fall." One objection to begin with, to this argument, is that it would be equally applicable in a case where the jury had expressly found the prisoner "not guilty" of murder in the second degree, but "guilty" of manslaughter. And yet certainly it would not be claimed in such a case that the prisoner could be again put upon his trial for the higher offense. But then this idea of the verdict being an entirety is technical, rather than real and practical. It will not do to thus controvert about terms and abstractions on a question involving the life and liberty of the citizen. When the prisoner was indicted for murder in the second degree, (or as in the case in Missouri, in the first degree) he could be put upon his trial for any offense the commission of which was necessarily included in that charged. And for any such offense he might not only be tried, but convicted. And upon what principle? Because the greater includes the lesser as

to each of the less, there was practically an indictment or charge, to which the prisoner is required to respond and does respond by his plea of "not guilty." This plea denies not only his guilt of the offense charged, but of every other other included in it, as above defined. Now if he is acquitted of the higher, he is only acquitted of that charged, if found guilty of a lower. It might be better to have the entry made so as to show formally the acquittal, and that the prisoner, upon the second trial, was held upon the charge of manslaughter. Or as Mr. Bishop (1 Cr. Law section 677) says, "the turning off of the dead matter by the prosecutor by *nol pros*, is the more orderly and neat way." And yet, while quoting this language, we do not deem such *nol pros* necessary for the protection of the prisoner's right, nor appropriate; for by the verdict the prisoner is discharged from further prosecution as to such "dead matter," and the entering of a *nolle* is entirely useless. But what we mean is, that the symmetry and order of business would be best maintained by having the record show a formal discharge, and that the subsequent proceedings were, as for the offense, for which he obtained a new trial, manslaughter in this case, or whatever it might be in any given case.

And these views are as we think amply sustained by the authorities. We first direct attention to those which it is claimed hold adversely. In *Morris* v. *The State*, 1 Blackf. 37, the question is disposed of without argument, and by a general remark of the judge delivering the opinion. In *United States* v. *Harding*, Wallace, Jr. 147, all that is found is a remark of Mr. Justice Grier, to the prisoners, when determining the motion for a new trial, but which is made without reference to authorities and without an attempt to show its correctness. *State* v. *Commissioners, &c.*, 3 Hill, S. C. 241, was by a majority of the court, and seems to hold as claimed by the State in this instance. Mr. Bishop (1 Cr. 677)) says: "Upon principle, if a prisoner after such finding, and without a *nol pros*, is granted a new trial, he would

seem to stand, in respect to those parts of the allegation on which the jury were silent, in the same position as in the case of a verdict too defective in form to sustain any judgment, and so liable to be tried for the whole." To sustain this he gives no reference, but leaves the question without discussion or examination. Mr. Wharton presents this distinction: "If the indictment contains several counts, then an acquittal upon one count and a conviction on others, would enable the prisoner to insist upon such acquittal if a new trial should be granted; but not so where there is but one count, and a new trial after a conviction of the inferior degree of offense. To support the distinction he cites the above named case in 1 Blackf. 37, and Wallace, Jr. 147.

Opposed to these authorities, are the following cases: Mr. Bishop in the section preceding that quoted, says where the verdict finds the prisoner guilty of part of a charge and not guilty of another, as where there is but one count, guilty of manslaughter and not guilty of murder, he can not, if a new trial is granted him, be convicted of the matter of which he was acquitted on the first. (Section 676.) And see the following cases: State v. Ball, 27 Mo. 324, where it is said that an affirmative verdict, in response to an indictment for murder in the first degree, of "guilty of murder in the second degree in manner and form as charged," is by implication an acquittal of murder in the first degree. People v. Gilmore, 4 Calf. 376; State v. Hornsby, 5 Louisa. 558; Slaughter v. The State, 6 Humph. 413; Jones v. Same, 13 Texas 184; Brennan v. The People, 15 Ill. 517; Scott v. Ross, 29 Mo. 32. These cases are of force in favor of the view here taken, because in each the indictment was murder either in the first or second degree, and the conviction on the first trial for a lower offense. And see further, 2 Virg. Cases 311; 2 Tyler 472; 9 Yerg. 335.

Nor can we agree with counsel for the State in the position that as the conviction was for manslaughter on the second trial, there was therefore no prejudice to the prisoner in

refusing the instruction asked. This same position was taken by the attorney for the State in the Ross case, 29 Mo. 32, and overruled under precisely similar circumstances. There the prisoner was indicted for murder in the first degree, was tried and convicted of murder in the second degree. On appeal this judgment was reversed, and on a second trial a similar verdict was found, except that the jury found expressly "not guilty" of murder in the first degree. On the second appeal, the very point now under consideration was urged by counsel. It was overruled, however, the court holding that all the instructions based upon the hypothesis that defendant could be convicted of murder in the first degree, were erroneous. And this view seems to us both just and reasonable. The right of every person charged with crime to an impartial trial, in our opinion would be very much infringed upon, if he could be tried at the same time, before the same jury, for an offense of which he had been acquitted. In the case before us, for instance, the judge charged the jury very fully and ably upon the law governing the offense of murder in the second degree, as also of manslaughter. All this was before the jury, for their consideration and discussion on the testimony submitted; and the reasonable and necessary effect of it, as it seems to us, must have been to confuse and mislead them and prejudice the defendant's cause. Without enlarging, therefore, we unite in the opinion that the case does not fall within the rule contended for by the State.

The court in its instructions in chief, as also in those asked by the State and given, expressly tell the jury that under the indictment they could find the defendant guilty of murder in the second degree. As the record itself, as we view it, shows an acquittal of this offence, we think the instructions were erroneous (without reference to the refusal of the one asked by the defendant on the same subject) though the plea of former acquittal was not formally pleaded.

II. The prisoner is indicted for the murder of one William

Tate. On the trial, as shown by the bill of exceptions, two witnesses gave testimony, "that deceased in the early part of the night after he was shot, made statements as to the cause of his death, which were verbal, and permitted to go to the jury as dying declarations." The State in the further prosecution of the cause, introduced one Taylor, a justice of the. peace, who testified that towards morning of the same night he wrote out a statement for deceased, which was presented and permitted to go to the jury. In this statement, which was verified by deceased, he gives a brief history of the circumstances, attending the shooting, which resulted in his death. To the introduction of this evidence the defendant objected and now assigns the same as error.

It is not objected that the deceased at the time of making these statements was not under a sense of approaching dissolution. The objection is that both declarations should not have gone to the jury, or if so, that the written statement should only have been used to refresh the memory of the witness.

From the condition of the record, the point made by appellant does not arise. Whether the oral declarations of deceased, as testified to by the witnesses were the same in substance as those contained in the written, sworn declarations, does not appear. If not then certainly they were admissible. If the only evidence of what he stated, was reduced to writing and signed by him at the time it was made, then the writing, if existing should be produced; and neither a copy or parol evidence of such declarations could be admitted to supply the omission. And if the writing and the oral statements were the same, then the absence of the writing should be accounted for, before evidence of the oral statement could be produced. If however the declarations were repeated at different times, and one of them should be reduced to writing, covering different ground and referring to different matters. from those comprised in the verbal statements, then both may be introduced. (1 Greenl. section 161;

Whart. Cr. Law 312, and cases there cited.) The statement itself if made *in extremis*, may be received in evidence.

III. Some objections are urged to the instructions given by the court. These instructions are very voluminous, covering some twenty pages of the record. As a whole we deem them entirely correct, giving to the jury the law of the case with much precision and accuracy. If upon any proposition involved, *all* of the law was not stated, this cannot avail the defendant, if that which was given was correct. And it is to this aspect of the instructions that the objections extend. Thus several abstract propositions are stated, that are undeniably correct. But, says the defendant, they are not correct under all circumstances, or without qualification. This may be true, and if the facts in the case justified, the qualifications might have been asked and properly given. If not asked however, or if the circumstances did not demand it, there was no error in stopping with the statement of the general rule. Thus the definition of voluntary manslaughter as found in the books, is repeated by the court almost literally. To this the prisoner objects, because the law governing cases of manslaughter where the fighting may not be voluntary, is not also stated. For this there was no necessity, as far as we can see, or if any, the defendant by asking an instruction could have had the same before the jury. And the same remark might be made of other objections urged.

For the error, in refusing the instruction asked on the subject of the former conviction and acquittal, as well as for those given on the same subject, the judgment is reversed.

Judgment reversed.