STATE OF IOWA, Appellee, v. JAMES HARBOUR, Appellant.

**HOMICIDE: Trial—Instructions—Undue Burden on State.** On a charge
1  of murder in the second degree, the court may very properly, on supporting testimony, instruct as to the effect of a conspiracy on the part of the attacking party, even though said instructions would have been appropriate, had the charge been of murder in the first degree. An accused may not complain that the State was compelled to carry an undue burden.

**HOMICIDE: Trial—Instructions—Burden of Proof in re Self-Defense.**
2  Instructions reviewed, and held to sufficiently charge that the State must negative self-defense beyond a reasonable doubt.

**HOMICIDE: Excusable or Justifiable—Willful Aggressors.** A willful
3  aggressor may not claim that he had a right to arm himself.

*Appeal from Pottawattamie District Court.*—J. B. ROCKAFEL-
LOW, Judge.

APRIL 4, 1922.

THE defendant, Harbour, together with one August Sierk and one Blanche Sierk, was indicted upon the charge of murder in the second degree, and upon trial, was convicted of manslaughter, and sentenced to imprisonment for an indeterminate

period, not exceeding eight years. From that judgment he appeals.—*Affirmed*.

*J. J. Hess* and *Genung & Genung*, for appellant.

*Ben J. Gibson*, Attorney General, and *John Fletcher*, Assistant Attorney General, for appellee.

WEAVER, J.—Sierk and wife were living on a farm in Pottawattamie County, and the appellant, Harbour, was in their employ. George Mikesell and his wife, Ruth, lived in the town of Carson. Ruth Mikesell was formerly the wife of Harbour, from whom she was divorced, and later married George Mikesell. At the time of the alleged crime, a horse belonging to Mrs. Mikesell was being pastured on Sierk's farm. Sierk, not desiring to keep the animal longer, notified its owner to take it away. On June 2, 1920, Mikesell, his wife, mother, and a young girl drove to the farm in an auto, for the purpose of getting the horse, and there met Sierk and wife and the appellant. Sierk and wife and Mrs. Mikesell had some conversation in regard to payment for the pasturage, a matter of $2.50. The woman asserted a small counterclaim against Sierk. There does not appear to have been any serious quarrel, but evidently there was some degree of irritation over the matter of settlement. After this conversation, Sierk, with the assistance of one or two of the Mikesell party, caught the horse, and Mrs. Mikesell led it to the road, and called her husband. The party entered the car, and, with Mikesell driving, and Mrs. Mikesell leading the animal, started in the direction of home. As they drove away, Mrs. Sierk upbraided her husband for letting the horse go without getting pay for the pasturage, and said to him:

"If you haven't nerve enough to stop that horse and get your money, I have; and if you will back the car out, I will go down the road and either get the money or the horse."

The appellant then said:

"I will go with you; that is the way they have paid their debts all their life."

The husband then backed their car out of the garage. Mrs. Sierk went into the house and immediately returned, armed

with a shotgun or rifle. Appellant and Mrs. Sierk and husband got into the car, and with the husband at the wheel, drove in the direction which had been taken by the Mikesell party. It appears that the latter had found some trouble in leading the horse, and when they had gone about half a mile, they stopped, and Mikesell mounted the animal, intending to ride it home. While they were engaged in making this change, Sierk, his wife, and appellant overtook them. The details of the occurrence at that place are the subject of direct conflict of evidence. The testimony was such that the jury could find that at least one of the Sierk party was armed with a "long gun" (a shotgun or rifle), and that the other two. were armed with a revolver each, and that, as soon as they overtook the Mikesell car, Mrs. Sierk leveled a revolver at Mrs. Mikesell, and demanded payment or possession of the horse, and that almost immediately shots were fired, and Mikesell fell from the horse, with at least two severe gunshot wounds, from which he died on the following day. When arrested, appellant told the sheriff he had shot Mikesell; and, according to the State's testimony, all three of the defendants were engaged in firing at the deceased. It is the appellant's claim that Mikesell was armed, and himself opened the battle, and that Mrs. Mikesell also took part in the shooting. For the prosecution, the testimony is that none of the Mikesell party had any weapons.

We shall not attempt any further statement of facts. It was enough to take the question of defendant's guilt to the jury. That the party with which he acted were the aggressors, and that they were armed with deadly weapons, is beyond question. They sought the conflict over a matter of the most trivial character, and manifested a most reckless disregard of the law. On no tenable theory can it be said that the verdict and judgment are not amply supported by the record. Indeed, appellant's counsel do not assert any lack of evidence as a ground for reversal, but base their complaint entirely upon alleged errors in the charge to the jury and certain rulings upon the admissibility of testimony. Of the assignments of error relied upon, some are entirely too general and indefinite to be considered on appeal. Others, reasonably sufficient in form and substance, are as follows:

I.   The first and chief exception to the court's charge is that, while the indictment charged appellant with the crime of murder in the second degree only, the court's instructions

1. HOMICIDE: trial: instructions: undue burden on State.

were such only as were appropriate to a charge of murder in the first degree. The chief specification of error in this respect is that the court instructed the jury on the subject of conspiracy between the accused persons, and the common guilt of all concerned therein, if such conspiracy be found, and it be further shown that the alleged crime was committed in pursuance thereof. The legal proposition advanced by counsel is that, if the killing were shown to be in pursuance of a previously formed conspiracy, the crime would be murder in the first degree, and that the giving of such instruction upon trial under an indictment charging only second-degree murder was prejudicial to the defense.   It is further contended there was no evidence justifying any instruction upon the subject of conspiracy.

We are of the opinion that the evidence fully warranted an instruction upon this subject.  The pursuit of the Mikesell party by the accused persons, armed with deadly weapons, for the avowed purpose of compelling by physical force the payment of a small sum of money or the surrender of the possession of the horse, is sufficient to justify the jury in finding that they were acting together, to effect an unlawful design; and the circumstances attending the attack or affray would further justify a finding that the killing of Mikesell was the direct and natural result of an attempt by appellant and his codefendants to carry out such unlawful purpose.  It was proper, therefore, to inform the jury upon the subject of conspiracy, and that, under such conditions, each member of such conspiracy, if proven, was chargeable as a principal in the commission of the crime.  See *State v. Shelledy,* 8 Iowa 477, 504; *State v. Munchrath,* 78 Iowa 268, 274; *State v. McCahill,* 72 Iowa 111, 116; *State v. Mushrush,* 97 Iowa 444.

II.   Had the effect of the instructions been to put the appellant on trial for murder in the first degree under an indictment charging only murder in the second degree, it would probably be held reversible error. *State v. Boyle,* 28 Iowa 522; *State v. McNally,* 32 Iowa 580.  But such is not the record nor the

complaint. The point made is not that the appellant was put upon trial for murder in the first degree, but that the State's evidence tended to show murder in the first degree. Even if this be true, it constitutes no error to the appellant's prejudice. The effect of such error, if error it be, is simply to increase the burden upon the State.

III. It is next said:

"The court erred in failing to charge the jury that, on the defendant's plea of self-defense, it was incumbent on the State to disprove such plea beyond a reasonable doubt."

2. HOMICIDE: trial: instructions: burden of proof *in re* self-defense.

The court, in the fourth paragraph of its charge, did instruct the jury very fully and fairly upon the general rules of law applicable to the plea or claim of self-defense, and in that connection told the jury that, if the State had shown an assault upon and the killing of George Mikesell by defendant, as alleged in the indictment, it was still "incumbent on the State to show by the evidence that such killing was *not* warranted on the ground of self-defense." The same rule is repeated in the thirtieth paragraph of the charge. Elsewhere, the court gave the usual general rule which requires the State to establish the elements of the alleged crime beyond a reasonable doubt. No additional or further instruction was requested by the defense, and there is no prejudicial error shown in those given by the court on its own motion.

IV. Complaint is also made that the court should have charged the jury that appellant had the right to arm himself for the purpose of self-defense, because of "the treatment he had

3. HOMICIDE: excusable or justifiable: willful aggressors.

received at the hands of Mikesell in some trouble or encounter between them on some previous occasion." Also, it is argued that the court should have told the jury that, if Mikesell came to his death from wounds inflicted upon him by some person other than appellant or his codefendants, then appellant should be acquitted.

There is not the slightest evidence in the record tending to show that the fatal wounds were inflicted by any person other than the three persons charged with the murder, and such an instruction would have been wholly out of place. The first proposition states a manifestly unsound rule of law. If it be true

that these men were at enmity, and that appellant had reason to fear violence at the hands of Mikesell, it was his duty to keep out of the quarrel between Mikesell and the Sierks. He was in no danger of attack, except as he invited it by his own voluntary conduct and thereby created a pretext for killing his enemy.

V. The other assignments of error are wholly insufficient to call for consideration at our hands. They are simply general statements of alleged errors, without setting out or specifying the reasons therefor.

We find no reason for interfering with the judgment below. The crime was of a flagrant and inexcusable character, and the conviction is well sustained by the evidence. The judgment of the district court is, therefore,—*Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.