STATE of Iowa, Appellee,

v.

James Earl SHARPE, Appellant.

No. 64109.

Supreme Court of Iowa.

April 15, 1981.

J. R. Sokol and Mark R. Lawson, of Sokol & Sokol, Maquoketa, and Harold De Lange II, of Wehr & De Lange, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., and Julie F. Pottorf, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McGIVERIN and LARSON, JJ.

LARSON, Justice.

This is an appeal by the defendant, James Earl Sharpe, from his conviction for second-degree murder, § 707.3, Code Supp.1977. He requests this court to reverse his conviction and grant him a new trial on the basis that the trial court erred in permitting the State to amend its original trial information, in admitting evidence of his marital infidelity, and in denying his motion for new trial based on the alternate grounds of insufficiency of the evidence and juror misconduct. We affirm.

The facts of this case arise against a background of domestic strife. On the evening of December 19, 1978, the defendant and his wife Charlene violently quarreled at their home in rural Jackson County. It was the sequence of events leading up to this argument that was the primary dispute of the parties at trial.

According to the defendant's testimony, the fight was precipitated by Charlene's drunken behavior. He testified that he had left work at a plant in Sabula, where the couple was employed, some four hours after his wife had left for home. He stated that upon his arrival at the house, Charlene, who was "very drunk and abusive," assaulted him; that he was thus provoked to hit her once in the face with the back of his hand, which knocked her to the floor and ended the argument. He then attempted to "sober her up" but failed in his effort. Although he left her to sleep on a living room couch for the night, he walked with her to the bedroom before he left for work early the next morning.

The defendant further testified that when he arrived at work he explained that Charlene's absence was due to her being sick. However, after a brief discussion with his coemployees, one suggesting that defendant should "have somebody look at her," he returned home, where he found her unconscious on the bedroom floor. He then phoned his secretary at home, who arrived at the Sharpe home shortly thereafter and assisted the defendant in transporting Charlene to a hospital. Brain surgery was subsequently performed on Charlene but she died four days later.

However, according to the State's evidence, the fight was not the result of a spontaneous family argument, but one which had its roots generally in a strained family atmosphere which was heightened by frequent and excessive consumption of alcohol; and specifically in the defendant's marital infidelity, in his antagonistic relations with his wife's family, and in his wife's desire to leave him. It produced evidence which indicated that Charlene had not been drinking on the evening of the argument; that she was upset with him that night because he had arrived home from work at a late hour and because she was aware of her husband's affair with another woman. From this evidence it was the State's conclusion that the defendant's hostility toward his wife culminated in his severe beating of her on that evening. This conclusion was supported with testimony by

the defendant's secretary that when she arrived to take Charlene to the hospital, Charlene's eyes were swollen shut and "[h]er face—everywhere that there was any skin ... was black and blue." Medical testimony established that Charlene's injuries, a blood clot and brain contusions and bruises, were caused by severe, sharp blows to the head.

After the presentation of this evidence, a jury returned the verdict finding the defendant guilty of second-degree murder. The defendant filed a motion for new trial, Iowa R.Crim.P. 23(2), alleging the errors claimed on appeal. The trial court denied the motion; judgment was entered; and the defendant now appeals.

*I. Amendment of the trial information.* Although the State had originally charged the defendant on January 2, 1979, with second-degree murder, § 707.3, it later amended the trial information and substituted the crime of first-degree murder, § 707.2, on May 29, 1979.[1] The defendant contends that the State thus violated Iowa Rule of Criminal Procedure 4(8)(a),[2] which provides:

> The court may, on motion of the state, and before or during the trial, order the indictment amended so as to correct errors or omissions in matters of form or substance. Amendment may be allowed before or during trial when no substantial rights of the defendant are prejudiced by the amendment, and if a wholly new and different offense is not charged.

We must first determine whether a "wholly new and different" offense was charged by the State. The trial court, in considering the State's motion to amend, noted that a trial information must charge the degree of murder; the offense "is no longer an open charge of murder with the degree to be determined at trial." The court permitted the amendment, however, because first-degree murder "is a separate offense, but not wholly new and different"

from second-degree murder, and because the defendant's rights were not prejudiced thereby. In supporting the ruling, the court observed that no new evidence or minutes of testimony were presented to support the charge as amended.

Section 773.46, The Code 1977, which was the predecessor to rule 4(8)(a), provided:

> Such amendment shall not be ordered when it will have the effect of charging the accused with an offense which is different than the offense which was intended to be charged in the indictment as returned by the grand jury.

Cases decided under section 773.46 evidenced a relatively narrow view of amendments in analogous cases. Thus, in *State v. Gowins*, 211 N.W.2d 302, 306 (Iowa 1973), we held the State could not amend a trial information charging escape (§ 745.1, The Code 1973) to charge willful escape (§ 247A.6, The Code). Because the escape offense, in contrast to willful escape, did not require the element of intent, we concluded that the amendment charged a different offense within the meaning of § 773.46, The Code 1973. In *State v. Hancock*, 164 N.W.2d 330, 336–37 (Iowa 1969), we concluded that the State could not amend the charge in an information from forgery (§ 718.1, The Code 1966) to uttering a forged instrument (§ 718.2, The Code) for the same reason.

Other cases, allowing amendments, must be distinguished: *State v. Fuhrmann*, 257 N.W.2d 619, 624 (Iowa 1977), held that it was permissible under section 773.43, The Code 1975, to amend a trial information charging first-degree murder by adding a charge of felony-murder. We held the amendment did not charge a "different" offense: felony-murder was only an alternative means of committing the crime of first-degree murder. *See also State v. Brown*, 253 Iowa 658, 663–64, 113 N.W.2d 286, 289–90 (1962) ("Under our law there is

---

1. The reason for the amendment is unclear; the State, in requesting permission to amend, did not claim the discovery of new evidence to support the amended charge.

2. Rule 4(8)(a) pertains to indictments, however it is made applicable to county attorneys' informations by rule 5(5).

but one crime called murder. So-called degrees of the offense do not constitute distinct crimes but graduations of the same crime for the purpose of permitting [a range of] punishment.") However, whether there remains only one crime of murder is left in doubt by our new rules. The statutory form of indictment in effect at the time of *Fuhrmann* and *Brown* was merely: "A. B. murdered C. D." § 773.35, The Code 1958 and 1975. Under the new rules, however, the form for indictment specifies the degree of the offense. Iowa R.Crim.P. 30 (Form 10) ("A. B. committed murder in the _____ degree, resulting in the death of C. D.").

The "wholly new and different" offense language of the new rule was considered by the trial court as relaxing the "different" offense prohibition of its statutory forerunner. In its order allowing the amendment, it concluded first-degree murder was, in fact, a different offense, but not *wholly* different. This seems to be the nub of the issue here: did this language change the prior rule? One authority says the new rule is merely an adoption of the prior law. 1 J. Roehrick, *The New Iowa Criminal Code: A Comparison* 464 (1978). We agree.

The State argues for a test similar to the legal or "element" test for included offenses. Under that theory, an offense would not be "wholly new and different" if it satisfied the test of similarity in elements. Under that reasoning, offenses which lie within the chain of included offenses could be substituted, either raising or lowering the original charge, (subject, of course, to satisfying the second prong of the rule-4(8)(a) test, that it not prejudice the "substantial rights of the defendant"). We do not believe the legislature intended to invest such wide discretion under the rule; this would mean that not only second-degree murder but manslaughter and perhaps, certain assaults could be amended to charge first-degree murder.

■ We believe first-degree murder was a "wholly new and different offense" within the meaning of the rule. In addition to the fact it contains elements not found in

second-degree murder (*see* § 707.1–.3, The Code), there is a great disparity in punishment—life imprisonment for first-degree murder, as contrasted to a 25-year maximum for second-degree. *Compare* § 707.-2, .3 *with* § 902.1, .9, The Code. And, interpreting the language of the rule according to its "approved usage," § 4.1(2), The Code, it is difficult to say that first-degree murder is not a "wholly new and different offense" from second-degree murder.

This view of the rule does not render the "wholly new" language meaningless. For example, it should eliminate doubt as to the propriety of amending a charge of first-degree murder by alleging a different means of committing the crime, specified in the new statute as separate divisions. *See* § 707.2, The Code. This would clearly not be a "wholly new and different offense," and would assure the rule of *Brown* and *Fuhrmann* would remain intact regardless of the change in the language of the murder statute.

It is unnecessary for us to determine whether the amendment was improper on the ground that it prejudiced substantial rights of the defendant because the amendment was proscribed by the "wholly new and different offense" language of the rule. However, even having concluded the amendment was error, we do not believe it was reversible error, for the reasons discussed below.

A line of Iowa cases, apparently beginning with *State v. Tweedy*, 11 Iowa 350, 357–58 (1860), has held that trial for a higher crime, improperly charged, is prejudicial, even though the defendant was only convicted of a lesser included offense which had been properly charged. The rationale of *Tweedy* was that it is prejudicial to the defendant for a jury to hear the evidence and law respecting murder, when manslaughter was the highest offense of which he could have been convicted. *Tweedy* was later cited in *State v. Boyle*, 28 Iowa 522, 525–26 (1870), involving a murder indictment, defective as to first-degree murder but not as to second-degree. The fact the jury convicted the defendant only

of second-degree murder did not render the error harmless, according to the court. No rationale was given in *Boyle* for the ruling; it merely said,

> we hold the trial for the higher offense is erroneous, because the indictment does not sufficiently charge the crime. In each case [*Boyle and Tweedy*] the identical error is found, viz: the prosecution of the accused for a higher offense than he could be convicted of upon the indictment.... Therefore, upon the authority of [*Tweedy*], we hold that it does not appear that the error found in the record was without prejudice to the prisoner.

*Id.* at 526. The case was reversed. The rule of *Tweedy* and *Boyle* has been relied upon by later cases holding that trial for a higher, improper, charge was reversible error, even though the conviction was actually of a lesser offense, as to which the indictment was not defective. *See, e. g., State v. Harbour,* 193 Iowa 657, 660–61, 187 N.W. 454, 456 (1922); *State v. Kyne,* 86 Iowa 616, 617–18, 53 N.W. 420, 420 (1892); *State v. Andrews,* 84 Iowa 88, 91–92, 50 N.W. 549, 550 (1891); *State v. Adams,* 78 Iowa 292, 297–98, 43 N.W. 194, 196 (1889); *State v. Knouse,* 29 Iowa 118, 119–120 (1870).

*Tweedy's* rationale, that it is prejudicial error to allow the jury to hear the facts and law on an improperly charged higher offense, is not discussed further in the cases following it. At least one case, *State v. McNally,* 32 Iowa 580 (1871), expressed some doubts about this rule:

> Were this question now for the first time before this court, some of us would, perhaps, reach a different conclusion from that arrived at in [*State v. Tweedy*]; yet, in view of the repeated determination of the question ... we unite in adhering to the rule there established.

*Id.* at 582.

■ Upon our examination of the rule and the underlying rationale as expressed in *Tweedy*, we conclude that a trial under an improper charge does not automatically vitiate a conviction of a lesser included offense, on the basis of presumed prejudice. If, as *Tweedy* indicates, evidence of an improperly charged higher crime will fatally infect a trial, even as to included offenses, the same reasoning would require reversal of a conviction for lesser included offenses if a higher charge had been dismissed after presentation of the State's evidence, because it could be argued that the jury was "poisoned" by the evidence of the higher crime. Furthermore, the *Tweedy* rule is impractical. Using the present case as an example, how much of the evidence bearing on first-degree murder was "overkill," under the *Tweedy* rule, which was not proper for the jury to consider as to the offense of second-degree murder? In all likelihood the same evidence would be presented by the State, whether it was a first-degree or second-degree murder charge. There is no claim here, nor does it appear from the record, that any evidence was received on the first-degree charge which would not also be admissible as to the second-degree charge.

The defendant contends, however, that as a consequence of permitting the amendment of the information, the possibility of his conviction for *second*-degree murder was enhanced. The theory is that there is more room for bargaining among jurors when there is a higher charge for bargaining stock. This argument rests on a presumption we cannot adhere to: that the jury violated its duty, sworn to under oath, to determine the facts and apply the law to them. *See State v. Nelson,* 166 Mo. 191, 207, 65 S.W. 749, 753 (1901) (it is presumed on appeal "that each juror concluded that it was his duty to be sworn and took the oath with a sense of responsibility to the State and to the accused"); *see also* G. Williams, *The Proof of Guilt* 277 (1963).

Similarly, "over-instructing," a concern in *Tweedy*, is generally not considered reversible error:

> While the general rule is that in a prosecution for a crime which is divided into degrees, if the trial court commits error in instructing the jury as to a higher degree of such crime, but properly instructs them as to the lower degree, and the verdict is guilty of the lower degree,

the error is harmless. At least, the accused convicted of the lesser degree cannot complain. However, the instruction, in view of the evidence, may be so strongly calculated to influence the conviction for the lesser crime as to constitute prejudicial error.

75 Am.Jur.2d *Trials* § 876, at 755 (1974). *See also* 24B C.J.S. *Criminal Law* § 1922(15), at 199–200:

> [E]rror in instructions as to a greater offense or higher degree of the crime is generally considered to be harmless where accused is convicted of a lesser offense or lower degree. It is also generally held that if accused is acquitted of a lower and convicted of a higher degree of crime, error in instruction as to the former is harmless, but circumstances of the particular case may justify the conclusion that the error was prejudicial. . . .

(Footnotes omitted.)

Also, if a court erroneously fails to dismiss the higher charge, the error is harmless, if the conviction is only of the lower offense. 75 Am.Jur.2d, *supra* § 420, at 458. *Cf. State v. Love*, 302 N.W.2d 115, 119 (Iowa 1981) (State's failure to prove premeditation or deliberation, where defendant charged with first degree murder and convicted of second degree murder, not ground for new trial).

We find no justification for retaining the rule that prejudice will be presumed when a defendant has been tried under an indictment improperly charging a higher offense, if the conviction is for an included offense, properly charged. In the absence of some showing of prejudice, or at least the likelihood of it, reversal will not be mandated on this basis. To the extent any of our prior cases are inconsistent with this holding, they are hereby overruled.

■ The prejudice claimed by the defendant here is basically that he "was forced just prior to trial to also combat the State's new allegations of premeditation and deliberation" and "his theories of defense had to be radically altered accordingly." He also claimed he was forced to "overprepare" because of the error in permitting the amendment. No details are given to support the claim of prejudice and it falls short of establishing even a likelihood of its existence.

In summary, while the amendment from second degree murder to first degree murder was erroneous, it was harmless error in this case.

■ *II. Admission of testimony concerning the defendant's marital infidelity.* On cross-examination the State asked the defendant several questions pertaining to his sexual relations with another woman. The defendant objected to this line of questioning on several grounds, including the relevancy of the evidence, but did not complain that its probative value was outweighed by the danger of unfair prejudice. On appeal he asserts this latter objection for the first time, contending the trial court abused its discretion in admitting the testimony. We have held in earlier cases that an objection in the trial court on the ground of relevancy is insufficient to preserve error on the ground of unfair prejudice. *See State v. Mark*, 286 N.W.2d 396, 410 (Iowa 1980); *State v. Sparks*, 238 N.W.2d 777, 779 (Iowa 1976). Accordingly, we do not consider the merits of the defendant's argument.

*III. The motion for new trial.* Pursuant to Iowa Rule of Criminal Procedure 23(2), the defendant filed a motion for new trial, alleging that the verdict was contrary to the evidence, and that misconduct on the part of the jury prevented a fair and just consideration of the case. He reasserts these claims on appeal.

■ *A. Insufficiency of the evidence.* The defendant alleges the jury verdict is not supported by the evidence; specifically, he argues the State did not prove that he acted with malice aforethought. §§ 707.1, 707.3, Code Supp.1977.

The scope of our review has been set forth in *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981):

> In reviewing motions for . . . a new trial based upon sufficiency of the evidence in criminal cases, this court views the evi-

dence in a light most favorable to the State. All legitimate inferences which may fairly and reasonably be deducted therefrom will be accepted. It is necessary to consider all of the evidence when determining evidential sufficiency.

... [A] jury verdict of guilty is binding ... unless there is no substantial evidence in the record to support it or such finding is clearly against the weight of the evidence. Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt.

(Citations and footnote omitted.)

Guided by these principles, we conclude from the totality of the evidence that a rational jury could have found, beyond a reasonable doubt, that the defendant murdered his wife. "Malice aforethought" has been defined as being

[a] fixed purpose or design to do some physical harm to another which exists prior to the act committed. It need not exist for any particular length of time and requires only such deliberation as would make a person appreciate and understand the nature of the act and its consequences, as distinguished from an act done in the heat of passion.

Iowa State Bar Association, II Iowa Uniform Jury Instructions Annotated (Criminal) No. 702 (1978); see State v. Leedom, 247 Iowa 911, 917, 76 N.W.2d 773, 776 (1967). Here, the State produced evidence that there had been earlier, heated and violent arguments between the defendant and his wife; that the defendant had, just prior to beating her, threatened to "knock [her] ___ head in"; that despite her pleas to stop, he repeatedly struck her; and that she had died as a result of a severe beating, her face being completely bruised. We find this evidence could have convinced a rational jury that the defendant possessed the state of mind required for conviction of murder in the second degree. See State v. Kellogg, 263 N.W.2d 539, 542 (Iowa 1978); State v. Leedom, 247 Iowa at 917, 76 N.W.2d at 776.

 *B. Jury misconduct.* The defendant alleges the jury deliberated only four hours before it returned its verdict. He claims that while there was no overt misconduct, the jury could not have possibly accomplished its duty in the instructions to fully and fairly discuss the evidence in so short a time, especially considering the severity of the crime charged.

We have held that a trial court is vested with broad discretion in ruling on a motion for new trial based on alleged jury misconduct. *State v. White*, 223 N.W.2d 173, 177 (Iowa 1974). Assuming, for purposes of argument, that the jury deliberated four hours, we find no such abuse of discretion in the present case. Absent some evidence indicating the jury disregarded its duties, we cannot presume the jury violated its sworn oath. *See State v. Nelson*, 166 Mo. 191, 65 S.W. 749, 753 (1901).

We find no reversible error.

AFFIRMED.