# IN THE COURT OF APPEALS OF IOWA

No. 19-1509
Filed January 21, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JAMEESHA RENAE ALLEN,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, David Porter, Judge.


    A defendant appeals her conviction for assault while using or displaying a dangerous weapon.  **REVERSED.**


    Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for appellant.

    Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.


    Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

A jury found Jameesha Allen guilty of assault while using or displaying a dangerous weapon. She appeals that conviction, alleging the district court issued three faulty rulings: (1) allowing the State to amend the trial information under Iowa Rule of Criminal Procedure 2.4(8), (2) admitting surveillance videos into evidence, and (3) rejecting a claim of prosecutorial misconduct in closing arguments.[1] Because the State charged a wholly new and different offense on the morning of trial, we reverse the conviction. Finding the first issue dispositive, we do not reach her other claims.

## I. Facts and Prior Proceedings

Allen's boyfriend, Desean, called 911 from the Dollar General parking lot. He told the operator he "needed the police as soon as possible" because "somebody scratched his car and stabbed [him]" on Welbeck Road. He reported being chased by "three guys and a girl" who had "bats and all types of stuff." The recording then dissolved to background noise and shouting for about ninety seconds before Desean told the operator: "They're still chasing me. I'm out here, there's five of them." Losing his patience, Desean declared: "I just got away from them again. . . . They got two cars, a white car and a blue car." He added: "She just tried to run me over. She's in the street now. They're trying to kill me." He then repeated: "She's running me over."

---

[1] Allen also claims her attorney was ineffective for not objecting under the Confrontation Clause to the admission of the complaining witness's out-of-court statements to police.

After another gap, the operator asked if Desean needed a medic. He responded: "Yes. I'm hurt. I'm bleeding." By this time, Desean had run past a Subway sandwich shop to a nearby HyVee grocery store. A surveillance video of the Subway drive-through lane captured a blue car jumping the curb and grazing Desean, who fell to the ground. Then from the HyVee entrance, Desean updated the dispatcher: "They're circling the parking lot." When the dispatcher asked what kind of injuries he had, Desean answered: "I got a lot ma'am, my elbow, my hand, everything."

Inside the grocery store, the assistant manager noticed Desean was bleeding from his left hand.[2] Desean said his girlfriend's mother, Sheila Thomas, struck him with her white car. When police officers arrived, they also saw blood dripping from Desean's hand. But Desean declined medical help and walked back to the apartment complex where the incident began.[3] An officer approaching the HyVee saw a blue car driving away and matched its plate to Allen's registration.

When interviewed the next day, Allen admitted driving the blue car as depicted in several store surveillance videos. Detective Brad Youngblut recorded the exchange on his body camera. Allen's hand was bandaged in the video. She told the detective: "Yes, that's me chasing Desean." When asked if she struck him with her car, Allen replied: "I don't think Desean got hit."

---

[2] It is unclear from the record whether Desean received his injuries from being stabbed, as he told the 911 operator, or from being struck by a car. The police report attached to the minutes of evidence described a struggle over a knife in the apartment complex parking lot and Allen suffering a cut to *her* hand.
[3] The police report recorded Desean's complaint that Allen and her family members were "busting up his vehicle" at the apartment complex where it had broken down.

Three weeks later, the county attorney filed preliminary complaints against Allen for criminal mischief and assault while using or displaying a dangerous weapon, both aggravated misdemeanors. The attached affidavit alleged Allen used her car as the weapon against Desean.

After another month, the State filed a three-count trial information charging Allen with criminal mischief and a different assault offense—assault causing bodily injury, a serious misdemeanor. The information also charged Thomas, Allen's mother, with assault while displaying a dangerous weapon.[4] The State later dismissed the charge against Thomas. The State also dismissed the criminal mischief count against Allen. But the State received permission to amend the serious-misdemeanor assault charge against Allen to assault while displaying a dangerous weapon, an aggravated misdemeanor.

At trial, the State offered testimony from the 911 operator, the HyVee assistant manager, a Subway employee, and the police officers. Desean did not testify. For the defense, Allen took the stand and denied driving a blue car on the day in question. To explain her videotaped interview with the detective, she testified it was a "miscommunication" about what day he was investigating.

In closing argument, the prosecutor explained the State's theory: "Now, we all probably drive cars. We know how they're used. We know what they're for. We also know if you use them the wrong way, they're a pretty dangerous weapon. You can kill someone."

---

[4] The trial information alleged Thomas pointed a firearm at Desean, but the police report stated Thomas "was arrested for assault with a weapon, the weapon being a motor vehicle."

The jury convicted Allen of the amended assault charge.  She appeals.

## II. Amending the Trial Information

Allen argues the district court erred in allowing the State to amend the trial information.  She contends the amendment charged a wholly new and different offense, prejudicing her substantial rights.  *See* Iowa R. Crim. P. 2.4(8); *see also* Iowa R. Crim. P. 2.5(5) (applying indictment rules to trial information).

The original trial information charged Allen with third-degree criminal mischief, an aggravated misdemeanor, in violation of Iowa Code section 716.5 (2019) and assault causing bodily injury, a serious misdemeanor, in violation of Iowa Code section 708.2(2).  On the first day of trial,[5] the court denied the State's motion to substitute a charge of willful injury for the criminal mischief count.  So the State dismissed the criminal mischief count.[6]  But the court allowed the State to amend the charge of assault causing bodily injury to assault while using or displaying a dangerous weapon, an aggravated misdemeanor, in violation of Iowa Code sections 708.1(2)(c) and 708.2(3).

---

[5] The State claims it moved to amend several days earlier.  Our record does not show such a filing.  The State did file additional minutes of testimony ten days before trial but did not amend the trial information until the trial started.  And those other minutes offered only a generic description of the testimony expected from the dispatcher:
> Specifically the witness will describe her role as a 911 dispatch operator and receiving a call on the date and time of the alleged offense.  That the call was recorded fairly and accurately.  The witness will testify about their impressions, conclusions and opinions reached as a result of their observations.

[6] The prosecutor explained because Desean would not cooperate, the State "did not have a victim to establish an amount in controversy for the criminal mischief charge."

Allen contends the court's approval of the amended assault charge violates Iowa Rule of Criminal Procedure 2.4(8). That rule allows the State to amend the trial information before or even during a trial "to correct errors or omissions in matters of form or substance." Iowa R. Crim. P. 2.4(8). But the rule disallows amendment "if substantial rights of the defendant are prejudiced by the amendment, or if a wholly new and different offense is charged." *Id.*

Because permission to amend is discretionary, we review for abuse of discretion—up to a point. *See State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997). The district court's discretion ends if the amendment prejudices substantial rights of the defendant or charges a wholly new and different offense. *Id.* We review those factors for correction of legal error. *See id.*; *see also State v. Michael*, Nos. 0-602 and 99-1578, 2000 WL 1675715, at *1–2 (Iowa Ct. App. Nov. 8, 2000) (discussing scope of review for ruling on motion to amend trial information).

We first examine whether the amendment charged a "wholly new and different offense" under rule 2.4(8). The earliest and fullest discussion of that phrase appears in *State v. Sharpe*. 304 N.W.2d 220, 223 (Iowa 1981). *Sharpe* held that an offense was "different" if it contained an element not found in the charged count.[7] *See id.* (finding first-degree murder differed from second-degree murder, in part, because it contained distinct elements). But the *Sharpe* court rejected the State's request to apply a legal-elements test similar to *Blockburger*

---

[7] The predecessor to rule 2.4(8) disallowed amendments if they had "the effect of charging the accused with an offense which is different than the offense which was intended to be charged in the indictment as returned by the grand jury." *Sharpe*, 304 N.W.2d at 222 (quoting Iowa Code § 773.46 (1977)). Despite substituting the phrase "wholly new and different" in place of "different," the new rule, according to *Sharpe*, was "merely an adoption of the prior law."

*v. United States*, 284 U.S. 299, 304 (1932): "Under [the State's] reasoning, offenses which lie within the chain of included offenses could be substituted, either raising or lowering the original charge." *Id.* The *Sharpe* court figured the legislature did not intend to allow the State that much leeway in amending a charge. Beyond the elements discussion, *Sharpe* highlighted the "great disparity" in the punishments between the two murder offenses. *Id.*

To interpret the "wholly new" language, *Sharpe* expressed what it was not. An offense is not "wholly new" if the amendment charges an alternative means of committing the same crime. *Id.* (endorsing "propriety of amending a charge of first-degree murder by alleging a different means of committing the crime"); *see also State v. Schertz*, 330 N.W.2d 1, 2 (Iowa 1983) (upholding amendment adding torture as means of committing first-degree kidnapping, already charged under serious-injury alternative); *State v. Williams*, 305 N.W.2d 428, 431 (Iowa 1981) (permitting amendment to drug-trafficking offense to add conspiracy alternative).

Defending the amendment here, the State contends the switch from one assault to another assault did not charge a different crime. In the State's view, the amendment alleged an alternative means of committing the same crime. To showcase its point, the State cites three assault definitions from the criminal code:

> A person commits an assault when, without justification, the person does any of the following:
> 
> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> 
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, or offensive, coupled with the apparent ability to execute the act.
> 
> c. Intentionally points any firearm toward another or displays in a threatening manner any dangerous weapon toward another.

Iowa Code § 708.1(2)(a)–(c).

From these definitions the State argues, "the various alternatives—a harmful touch, an act intended so, and display of a dangerous weapon—are all alternatives within a single code section."[8]  Insisting the elements are the same under the original and amended assault charges, the State contends it makes no difference that paragraph (c) carries a higher penalty (an aggravated misdemeanor rather than a serious misdemeanor).  For that proposition, the State relies on *Maghee*, where our supreme court upheld an amendment of drug possession from a class "C" felony to a class "B" felony based on the amount of drugs because the elements forming the "base prohibition" remained the same.  573 N.W.2d at 5.

Rebutting the State's position, Allen distinguishes *Maghee* as a case involving enhanced punishment, rather than a change in elements.  *See id.*  She instead focuses on *Sharpe* and its reminder that courts should take a "relatively narrow view" of allowing amendments that add elements to the original charge. *See* 304 N.W.2d at 222.  In looking at the elements, Allen posts a side-by-side comparison of assault causing bodily injury (which requires proof that Allen intended to cause pain or injury and that Desean suffered a bodily injury) and

---

[8] The first two alternatives under section 708.1(2) describe different acts. Paragraph (a) reflects the common law crime of battery, an act intended to cause painful physical contact.  *See State v. Yanda*, 146 N.W.2d 255, 255 (Iowa 1966). Paragraph (b) reflects the common law crime of assault, a more preliminary act intended to place another in fear of immediate physical contact.  *See id.* at 256 (describing an assault as "the initial stage of an act which is aggravated by a battery").  The third alternative or paragraph (c), intentionally pointing a firearm at another or displaying in a threatening manner any dangerous weapon toward another, resembles the offense of recklessly endangering another person described in the assault chapter of the Model Penal Code.  *See* Model Penal Code § 211.2 (Am. Law. Inst.).

assault while displaying a dangerous weapon (which does not require proof of specific intent or injury but requires evidence that she brandished a dangerous weapon in a threatening manner). *Compare* Iowa Code § 708.1(2)(a), *and* § 708.2(2), *with* § 708.1(2)(c), *and* § 708.2(3); *see also State v. Beck*, 854 N.W.2d 56, 66 (Iowa Ct. App. 2014) (suggesting third definition of assault was general-intent crime while first two definitions required proof of specific intent).

In response, the State argues that Allen's method of "standing the elements and punishment of one offense up against those of another does not answer the issue here." The State characterizes *Sharpe* as foreclosing a *Blockburger*-style elements comparison. The State is right and wrong. Right that *Sharpe* forecloses amending a charge of second-degree murder (or even manslaughter or assaults) up to first-degree murder because they are lesser-included offenses. 304 N.W.2d at 223. But wrong that *Sharpe* shuns a comparison of elements (or punishments) when deciding whether an offense is wholly new and different. Just the opposite is true. *Sharpe* commands such a comparison. *Id.* at 222.

On some level recognizing that command, the State alternatively asserts that all the prosecutor "did was allege an alternative means of committing assault."[9] But the difference between the "means of committing" an offense and "an element" of an offense is sometimes murky. At their core, "elements" are the "constituent

---

[9] The State's argument would be more compelling if the trial information had first charged an aggravated-misdemeanor assault. *See Michael*, 2000 WL 1675715, at *2 (upholding amendment where State first charged domestic abuse assault with intent to commit serious injury under sections 708.1(1) [now section 708.1(2)(a)] and 708.2A(2)(c), and later added reference to section 708.1(3) [now section 708.1(2)(c)]). In that case, the original charge alerted Michael to the State's allegation that he used dangerous weapon. *See id.* The same isn't true for the original trial information against Allen.

parts" of a crime's legal definition—the things the "prosecution must prove to sustain a conviction." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (quoting *Elements*, *Black's Law Dictionary* (10th ed. 2014)). "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant . . . ." *Id.*

Applying this definition to section 708.1(2)(c), the State had to prove that Allen displayed a dangerous weapon in a threatening manner toward another. Those constituent parts of the aggravated-misdemeanor assault were elements— elements not included in the serious-misdemeanor assault causing bodily injury. Because the new charge had elements not included in the original charge and carried a harsher punishment,[10] under *Sharpe*, the district court should have disallowed the amendment.

Before concluding, we address one more argument. The State reasons that the amended offense was not wholly new and different because it appeared in the same code section as the original charge. *See* Iowa Code § 708.1(2) (defining three assault crimes). True, we have mentioned the "same code section" in our cases. *See, e.g.*, *State v. Brisco*, 816 N.W.2d 415, 418 (Iowa Ct. App. 2012) (noting "the amended trial information charged violations of the same code section" (quoting *Maghee*, 573 N.W.2d at 5)). Yet how the code editor arranges various crimes is not controlling. *See generally State v. Webb*, 156 N.W.2d 299, 301 (Iowa

---

[10] The State downplays the increase in punishment (one to two years). But we find the difference between the two categories of misdemeanors significant not only for the maximum length of the sentence and amount of the fine, but in the place of confinement (jail versus prison) and the extra requirement to submit a DNA specimen. *See* Iowa Code §§ 81.2, 903.1(1), .4.

1968) (holding that headings drafted by code editors "are not a part of the law as enacted"). Remember that one code section defines both first- and second-degree murder. Iowa Code § 707.1. Yet first-degree murder is a wholly new and different offense than second-degree murder. *See Sharpe*, 304 N.W.2d at 223. Under *Sharpe*, the higher offense of assault while displaying a dangerous weapon is wholly new and different from the charged offense of assault causing bodily injury—regardless of their numbering in the Code.

Because we hold the district court should have disallowed the amendment as charging a wholly new and different offense, we need not address whether the amendment prejudiced Allen's substantial rights.

**REVERSED.**