**STATE of Iowa, Appellee,**

v.

**Myron Paul LAWLER, Appellant.**

**No. 96–1118.**

Supreme Court of Iowa.

Nov. 26, 1997.

Thomas D. Hanson and Dale A. Knoshaug of Hanson, Bjork & Russell, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, Lee E. Poppen, County Attorney, and Jeffrey R. TeKippe, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

Defendant Myron Paul Lawler challenges his convictions for false imprisonment, in violation of Iowa Code section 710.7(1995), and simple assault, in violation of section 708.2(4). He claims error by the trial court in connection with jury instructions, admission of testimony, and sentencing.

The main fighting point in this case involves the district court's jury instructions regarding defendant's claim that he and his co-defendant acted with justification based on their alleged right to conduct a citizen's arrest of a suspected burglar of the co-defendant's egg plant.

Because we conclude the trial court incorrectly instructed the jury regarding the burden of proof on the justification issue, we reverse and remand for a new trial.

I. *Background facts and proceedings.* The incident giving rise to this case is char-

acterized by the defendant as a "citizen's arrest" and by the State as unlawful vigilante action. Defendant Lawler, an employee of DeCoster Farms of Iowa, had business ties with John William Glessner, Jr., the president of Boomsma's, Inc. ("Boomsma"), an egg production company in Wright County. The company's egg-laying and processing facilities are owned by DeCoster Farms, while Boomsma leases and manages those plants.

Computer equipment was stolen, an egg-grading machine damaged, and vandalism occurred at one of the plants in June 1995. The plant work stopped until a replacement computer was flown in. Glessner later learned from an informant the identities of four men suspected to be the burglars.

Glessner asked Lawler to accompany him on June 27 to the apartment of Carmen Gomez and her husband, where one of the suspects, Ulises Castillo, who had confessed to the informant, was thought to be staying. The burglary had not yet been reported to law enforcement officials, although Glessner testified he believed his wife had done so. Third-degree burglary is a class "D" felony. *See* Iowa Code §§ 713.1, .6A.

Accounts vary as to what happened after Glessner and Lawler arrived at the Gomez residence. Glessner and Lawler testified that after they knocked on the door, Carmen Gomez opened it. They said that after a brief conversation with Gomez, she stepped back from the door and thus indicated they could enter the apartment. After they entered, Glessner saw and recognized Lucas Ortega, a former employee of Boomsma and one of the four men suspected by Glessner in connection with the Boomsma burglary. Castillo was not in the apartment. Witnesses for the State testified that Glessner and Lawler forced their way into the apartment without permission and that Glessner shoved Gomez to the floor in the process. In their trial testimony, defendant and Glessner denied that happened. Lawler and Glessner testified they told Ortega they were taking him to the police. Glessner asked Ortega where the stolen computer was. It is undisputed that Glessner and Lawler took Ortega down the apartment stairs. They bound his hands with duct tape after he tried to run away from them. They then placed him in Glessner's pickup truck.

Glessner and Lawler took Ortega to a new Boomsma plant which was under construction. They testified that Ortega said several times he did not want to be taken to the police and instead wanted an interpreter whom he named. Ortega testified that during that trip, Glessner and Lawler struck him and made several threats to him. In their testimony, Glessner and Lawler deny those allegations. At the Boomsma plant, Glessner and Lawler questioned Ortega about the burglary through a Boomsma employee who acted as an interpreter. Ortega does not speak English fluently.

Glessner testified he intended to turn Ortega over to the county sheriff because he believed the sheriff's office previously had been notified of the plant burglary. At Glessner's request, Glessner's wife called the sheriff's office to report the burglary and notify the sheriff where he could pick up the suspect, Ortega, at the Boomsma plant.

Following questioning of Ortega by law enforcement officers, Glessner and Lawler were arrested and charged by trial information with trespass resulting in injury concerning their entrance into the Gomez apartment, *see* Iowa Code section 716.8(2), kidnapping in the third degree, *see* section 710.4, and assault while participating in a felony, *see* section 708.3. The trespass charge was later dismissed by the State. Glessner and Lawler entered pleas of not guilty, and the case proceeded to a jury trial.

At the joint trial of Lawler and Glessner, Ortega admitted he participated in the June burglary of the Boomsma plant.

The jury determined that Lawler and Glessner were guilty of the lesser included offenses of false imprisonment, a serious misdemeanor, *see* Iowa Code section 710.7, and simple assault, a simple misdemeanor, *see* section 708.2(4). The trial court entered judgment of conviction based upon the jury's verdict and sentenced Lawler and Glessner.

Defendant Lawler appealed the judgment and sentences.

II. *Standards of review.* Our review of trial court determinations concerning jury instructions is for errors at law. Iowa R.App. P. 4; *State v. Kellogg,* 542 N.W.2d 514, 516 (Iowa 1996). However, any constitutional claims are reviewed de novo. *State v. Klindt,* 542 N.W.2d 553, 554 (Iowa 1996). The admission of testimony is generally within the trial court's discretion. *State v. Hubka,* 480 N.W.2d 867, 868 (Iowa 1992).

III. *Defendant's convictions and sentences.* On appeal to us, defendant Lawler raises several challenges to his convictions and sentences for false imprisonment and simple assault. Lawler claims, among other things, that the trial court erred in: (1) instructing the jury that defendant had the burden of proof in connection with defendant's claimed justification defense based on a citizen's arrest; and (2) admitting the testimony of a witness for the State. We address these arguments in turn.

A. *Citizen's arrest.* With regard to defendant Lawler's claim that his actions concerning Lucas Ortega were justified because they constituted a citizen's arrest, the trial court instructed the jury that defendant had the burden of proving that defense by a preponderance of the evidence. Lawler challenges that instruction and contends the burden of proof should have been placed on the State to disprove the defense.

■ 1. Defendant Lawler was charged with kidnapping in the third degree, of which false imprisonment is a lesser included offense, and assault while participating in a felony, of which assault is an included offense. A citizen's arrest is a defense to charges of false imprisonment and assault. *See Maxwell v. Maxwell,* 189 Iowa 7, 13, 177 N.W. 541, 543–44 (1920).

■ Iowa Code chapter 704 sets forth a number of defenses to the otherwise unlawful use of force. Among these are the "citizen's arrest": "[a] peace officer *or other person* making an arrest or securing an arrested person may use such force as is permitted by sections 804.8, 804.10, 804.13 and 804.15." Iowa Code § 704.12 (emphasis added). The inclusion of that provision in chapter 704 signifies its status as an affirmative defense. *Cf. State v. Delay,* 320 N.W.2d 831, 834 (Iowa 1982) (pointing to inclusion of self-defense justification in chapter 704 as evidence that self-defense is affirmative defense); *State v. Moorhead,* 308 N.W.2d 60, 62–63 (Iowa 1981).

Because it is an affirmative defense under Iowa Code section 704.12, the defendant has the burden of going forward with sufficient evidence to show that the defense applies. *See Delay,* 320 N.W.2d at 834. However, once the defendant has produced evidence sufficient to invoke the defense, the burden shifts to the State to disprove the citizen's arrest defense beyond a reasonable doubt, so that the ultimate burden of proof remains on the State. *See id.*[1] In a criminal case involving a citizen's arrest defense, we noted: "*the burden being at all times upon the State,* the defendant is entitled to an instruction which shall set before the jury the rule or criterion by which the question of justification is to be determined." *State v. Metcalfe,* 203 Iowa 155, 170, 212 N.W. 382, 389 (1927) (emphasis added).

The elements of the citizen's arrest defense are set forth in several statutory provisions. Iowa Code section 804.9 provides in part that a private person may make an arrest "[w]hen a felony has been committed, and the person has reasonable ground for believing that the person to be arrested has committed it." An arrest is "the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." Iowa Code § 804.5. Other provisions contained in Iowa Code chapter 804 also govern arrests by private persons. Under section 804.14, a person making an arrest "must inform the person to be arrested of the intention to arrest the person [and] the reason for arrest...." Section 804.24 requires that "[a] private citizen who has arrested another for the commission of an of-

---

1. In some civil cases, this court has placed the burden of proof on the defendant regarding a claim of justification. *See Fox v. McCurnin,* 205 Iowa 752, 759, 218 N.W. 499, 502 (1928); *Maxwell v. Maxwell,* 189 Iowa 7, 13, 177 N.W. 541, 544 (1920). However, those cases are not relevant to the proper allocation of the burden of proof in criminal cases.

fense must, without unnecessary delay, take the arrested person before a magistrate, or deliver the arrested person to a peace officer...." A private person making an arrest is justified in the use of such force as the person reasonably believes to be necessary to make the arrest, prevent serious injury to any person, or prevent the escape of the arrested person from custody. Iowa Code §§ 804.10, .13. "An arrest to be effective does not require formal words of arrest...." *State v. Harvey*, 242 N.W.2d 330, 339 (Iowa 1976) (quoting *United States v. Hensley*, 374 F.2d 341, 348 (6th Cir.1967)).

2. In response to defendant Lawler's challenge to the jury instruction concerning citizen's arrest given by the trial court, the State argues that a jury instruction regarding the citizen's arrest defense was not warranted under the facts of this case. At trial, the State objected to the giving of a citizen's arrest instruction on that ground. The trial court overruled the State's objection. On appeal, the State continues to urge that defendant Lawler did not present sufficient evidence that he had effected a citizen's arrest of Ortega to sustain a jury instruction on that defense. The State asserts that any trial court error in placing the burden of proof on defendant concerning a citizen's arrest defense instruction was harmless beyond a reasonable doubt.

Defendant Lawler contends the following evidence presented at trial was sufficient to raise a citizen's arrest defense. Both Glessner and Lawler testified at trial that upon entering Gomez' apartment with her permission shortly before 7:00 a.m. and taking custody of Ortega, Glessner immediately told him they were taking him to the police and repeated that statement to him as they took Ortega down the stairs and into the pickup. Glessner also asked Ortega about the location of the stolen computer. In a later taped interview with law enforcement officials, Ortega said he tried to escape from Glessner and Lawler because Glessner told him they were going to the police. With regard to the amount of force used by Glessner and Lawler on Ortega, Glessner and Lawler stated in their trial testimony they did not drag, but rather helped, Ortega down the stairs. They

further testified that they did not strike Ortega at any time and that they bound his hands with duct tape only after he broke free and tried to run away. According to the version of Glessner and Lawler, any delay in going to the police was due to the fact that Ortega several times begged them not to take him to the police and requested that they go to see a Boomsma employee who could act as an interpreter for Ortega concerning the whole matter. After Glessner and Lawler questioned Ortega through the interpreter, Glessner's wife called the sheriff before 9:00 a.m., advising him where he could pick up Ortega, and upon the sheriff's arrival about forty-five minutes later Ortega was delivered to the sheriff's custody.

We agree with defendant and the trial court that defendant presented sufficient evidence to raise the citizen's arrest defense. At the very least, the evidence created a fact question for the jury as to whether Lawler's actions were justified. *See* Iowa R.Crim.P. 20(2) (questions of fact are to be tried by the jury).

To adopt the State's position would in substance discount or give no credibility to defendant's evidence and version of what happened and why it happened, thus precluding the jury's consideration of the crux of defendant's defense in this case.

In essence, a refusal to give a requested jury instruction would be the equivalent of directing a verdict or granting a motion for summary judgment for the State on this issue. The rule is that a court may not grant a directed verdict or a motion for summary judgment when a genuine issue of material fact exists. *See* Iowa R.Civ.P. 237(c); *Smith v. CRST Int'l, Inc.*, 553 N.W.2d 890, 893 (Iowa 1996) (record on summary judgment motion is reviewed the same as on a motion for directed verdict). We believe it would likewise be inappropriate to deny a defendant an opportunity to present his or her defense to the jury when the defendant has presented sufficient evidence to create a fact question regarding the applicability of the defense. This finding is consistent with the rule that in determining whether there is sufficient evidence to support submission of a jury instruction to the jury, the court views

the evidence in a light most favorable to the requesting party. *See State v. Hogrefe,* 557 N.W.2d 871, 876 (Iowa 1996) (evidence is substantial "when a reasonable mind would accept the evidence as adequate to reach a conclusion").

We find that the trial court did not abuse its discretion in deciding to give a citizen's arrest justification jury instruction. *See State v. Cunningham,* 463 N.W.2d 887, 889 (Iowa App.1990) (trial court's decision regarding instruction will not be disturbed absent abuse of discretion); *State v. Lewis,* 391 N.W.2d 726, 728 (Iowa App.1986) (no abuse of discretion unless "such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable").

In sum, we conclude that sufficient evidence was presented at trial to raise the citizen's arrest defense and to require the trial court to give a proper citizen's arrest justification jury instruction.

■ 3. In this case jury instruction no. 36, covering all charges against the defendant, stated in part:

> Defendant claims his actions here constitute a citizen's arrest. If you find Defendant made a citizen's arrest as set forth below, this would constitute a defense to the criminal charges involved. Defendant has the burden of proving this defense and must prove all of the following by a preponderance of the evidence.

That instruction is an incorrect statement of the law; as defendant contended, the State must bear the ultimate burden of proving that the defense does not apply. *See Delay,* 320 N.W.2d at 834; *cf.* I Iowa Crim. Jury Instructions 200.17 (1988) (instructing that State must disprove beyond a reasonable doubt defendant's defense of entrapment). Improper allocation of the burden of proof constitutes reversible error. *State v. Levsen,* 261 N.W.2d 471, 474–75 (Iowa 1978); *State v. Watts,* 244 N.W.2d 586, 588–89 (Iowa 1976).

■ Because the trial court incorrectly placed the burden of proof on defendant to prove the citizen's arrest justification defense rather than on the State to disprove the defense, reversal of the trial court's judgment is necessary.

Although our conclusion here is dispositive of this appeal, we proceed to address another issue that may arise on retrial.

B. *Testimony of Carmen Gomez.* At trial, Carmen Gomez testified for the State about the entry of Lawler and Glessner into her residence and the taking of Ortega into custody. Defendant Lawler contends the testimony of Gomez should not have been admitted because it was relevant only to the charge of trespass resulting in injury, which was dismissed by the State during trial before evidence was presented. *See Iowa R. Evid.* 402. He further contends that even if relevant, the testimony should have been excluded as unfairly prejudicial under Iowa rule of evidence 403.

■ We do not believe the trial court abused its discretion in admitting the testimony of Gomez. Her account of the manner in which Lawler entered the apartment and seized Ortega was admissible in order to give an explanation of the occurrence involving Ortega that led to the other charges against Lawler. *See State v. Holbrook,* 261 N.W.2d 480, 481 (Iowa 1978). Moreover, under Iowa rule of evidence 403, the probative value of the testimony was not outweighed by the risk of unfair prejudice to defendant. We think it unlikely the testimony caused the jury to reach its decision based on emotion or some other improper factor. *See State v. Plaster,* 424 N.W.2d 226, 231–32 (Iowa 1988).

IV. *Disposition.* We do not address other issues raised on the appeal, including other challenges to jury instruction no. 36, because either error was not preserved or they may not arise on retrial. Because the trial court incorrectly instructed the jury that defendant had the burden of proof in connection with his justification defense of citizen's arrest, we must reverse the judgment and sentences entered upon defendant's convictions and remand for a new trial.

**REVERSED AND REMANDED.**