**STATE of Iowa, Appellee,**

v.

**Phillip McFARLAND, Appellant.**

No. 97–1928.

Court of Appeals of Iowa.

April 30, 1999.

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Victoria Dominguez, Law Student Intern, Bruce Kempkes, Assistant Attorney General, John P. Sarcone, County Attorney, and Odell McGhee, Assistant County Attorney, for appellee.

Heard by STREIT, P.J., and VOGEL and ZIMMER, JJ.

STREIT, Presiding J.

Two men broke into a private home in the middle of the night, terrorized its occupants, and later claimed they could do so because they were pursuing a bond jumper. Phillip McFarland appeals his conviction and sentence for second-degree burglary contending the State presented insufficient evidence of burglarious intent and the trial court erred in refusing to

instruct the jury on his proffered citizen's arrest affirmative defense. Because we find sufficient evidence proving McFarland's intent to assault the occupants of the home he broke into and his requested instruction was not supported by the evidence, we affirm.

### I. Procedural Background & Facts.

Philip McFarland and Edward Green claimed to be bounty hunters who pursued individuals who failed to appear at criminal proceedings after obtaining bail bonds. In March 1997, they allegedly received a tip that Maurecio Gomez had skipped bail and was staying at a mobile home park in Des Moines. On March 18, 1997, sometime between 1:30 and 2:30 a.m., McFarland and Green arrived at the mobile home of Wendell and Sandy Leach. The Leaches and three of their four children were home.

McFarland began pounding on the front door of the Leach mobile home. When Wendell Jr. asked what was going on, McFarland broke the front door open and barged into the home. In the process, the door flew open and Wendell Jr. was knocked against a closet. McFarland said he was a bounty hunter and stated he was "looking for some Mexicans." Sandy and Wendell argued with McFarland about his being in their home. McFarland threatened to "smack" Sandy if she did not "shut up." When McFarland realized Gomez was not connected with the Leaches, he apologized, left the home, and went to the trailer next door.

McFarland was charged with second-degree burglary. At trial, McFarland's request for a jury instruction on a citizen's arrest, which he claimed encapsulated his defense, was denied. McFarland was convicted of second-degree burglary and sentenced to an indeterminate ten-year sentence. McFarland appeals.

### II. Evidence of Intent Supporting Second–Degree Burglary Conviction.

▮ McFarland contends the State did not prove with sufficient evidence he acted with the specific intent necessary to sustain a second-degree burglary conviction.

▮ Our standard of review for claims of insufficient evidence is well established. We review such claims for errors at law. Iowa R.App.P. 4.; *State v. Nichols*, 572 N.W.2d 163, 163 (Iowa App. 1997). A verdict of guilty is binding on appeal unless no substantial evidence in the record exists to support it, or it is clearly against the weight of the evidence. *State v. Forsyth*, 547 N.W.2d 833, 834 (Iowa App.1996). Substantial evidence means evidence that could convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *State v. Maghee*, 573 N.W.2d 1, 10 (Iowa 1997).

▮ In determining the sufficiency of the evidence, we view the record in a light most favorable to the State. *State v. Milner*, 571 N.W.2d 7, 10 (Iowa 1997). All evidence is considered, not merely the evidence supporting the verdict. *State v. Walker*, 538 N.W.2d 316, 319 (Iowa App. 1995). Direct and circumstantial evidence are equally probative. Iowa R.App.P. 14(f)(16). Although a jury verdict can rest on circumstantial evidence, the evidence must raise a fair inference of guilt as to each element of the crime. *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992).

A burglary is committed when "[a]ny person, having the intent to commit a felony, assault or theft therein, ... enters an occupied structure not being open to the public...." Iowa Code § 713.1 (1997). McFarland argues the evidence was insufficient to show he intended to commit an assault when he broke into the Leach mobile home.

▮ "[T]he element of intent in burglary is seldom susceptible to proof by direct evidence." *State v. Finnel*, 515 N.W.2d 41, 43 (Iowa 1994). Usually proof of intent will depend upon circumstantial evidence and inferences drawn from such evidence. *Id.* A jury may infer intent to commit an assault from the circumstances

of the defendant's entry into the premises and his acts preceding and following entry. *Id.* The requirement of proof beyond a reasonable doubt is satisfied if it is more likely than not the inference of intent is true. *Id.*

McFarland argues his intent was to arrest Gomez, not to assault Gomez. However, the circumstances of McFarland's entry into the home, including the time, manner, and nature of the entry, could have led the jury to the conclusion McFarland had the specific intent to assault whoever was in the Leach home when he broke down the door. If not an intent to assault Gomez, the jury could have reasonably concluded an intent to assault occupants inside who hampered his arrest of Gomez. McFarland forcefully broke into the Leach home in the middle of the night and, in the process, he broke the front door to their home. McFarland was armed with a stun gun; and the door was blocked by his cohort, Green. Once inside, McFarland assaulted occupants of the home. These facts make the inference McFarland entered the mobile home with an intent to commit assault more likely than not true. *See id.* The jury could properly infer McFarland's intent to commit an assault and could disbelieve McFarland's claims concerning intent from this evidence. For this reason, there was sufficient proof to support McFarland's conviction of second-degree burglary.

### III. Jury Instructions.

McFarland contends the trial court erred in refusing to instruct the jury

1. A private person may make an arrest:
   1. For a public offense committed or attempted in the person's presence.
   2. When a felony has been committed, and the person has reasonable ground for believing that the person to be arrested has committed it.
   Iowa Code § 804.9 (1997).

2. In *Lawler,* the defendant apprehended Ortega at Ortega's apartment. He and a cohort bound Ortega's hands with duct tape after he

on the authority of private persons to arrest.

Arrests by private persons are permitted by section 804.9 of the Iowa Code.[1] A person making an arrest, who is not summoned or directed by a peace officer to do so, is justified in using force to make the arrest in limited circumstances. *See* Iowa Code §§ 704.12, 804.10 (1997). Those circumstances are when "the person reasonably believes [force is] necessary to make the arrest or ... the person reasonably believes [force] to be necessary to prevent serious injury to any person." *Id.* § 804.10.

In *State v. Lawler,* our supreme court held citizen's arrest, under the circumstances of that case, was an affirmative defense to an unlawful use of force. *State v. Lawler,* 571 N.W.2d 486, 489 (1997).[2]

Ordinarily, the district court must instruct on a defendant's theory of defense provided the defendant makes a timely request, the requested theory of defense instruction is supported by the evidence, and the requested instruction is a correct statement of the law. *State v. Johnson,* 534 N.W.2d 118, 124 (Iowa App. 1995). Evidence in support of the requested instruction must be substantial. *State v. Broughton,* 425 N.W.2d 48, 51–52 (Iowa 1988). Evidence is substantial if it could convince a rational fact finder the defendant has established the affirmative defense. *Id.*

Under the evidence in this case, McFarland was not entitled to his requested theory of defense instruction. This case is not like *Lawler.* The force used by

tried to run. They placed him in a pickup truck. Ultimately they were charged with trespass resulting in injury, third-degree kidnaping, and assault while participating in a felony. Our supreme court agreed with the trial court's submission of the citizen's arrest defense instruction under these circumstances, but reversed the conviction because the trial court imposed a preponderance of the evidence burden of proof upon the defendant in proving the defense.

McFarland was not against Gomez, a felon, while making an arrest. McFarland never achieved an arrest nor attempted an arrest of Gomez. The force used was against the Leaches. The Leaches were not felons, but innocent third parties. Neither were they unintended victims. They were not interfering with McFarland's arrest of Gomez. They did not know Gomez. A rational fact finder could not have found McFarland reasonably thought it necessary to use force[3] against the Leaches to perfect his arrest of Gomez. Without a warrant or due process,[4] McFarland forcibly and without consent, broke into the Leaches' home and assaulted them. These facts do not support the citizen's arrest affirmative defense given to the jury in *Lawler*.

■ We hold the citizen's arrest defense can not be used as an affirmative defense to burglary or assault when the unlawful entry or force is used against an innocent third person, who is neither a felon or a person interfering with the lawful arrest of a felon. Courts from several other states have held the same.[5] For these reasons, the trial court did not err in refusing to give McFarland's proffered affirmative defense.

The rulings of the trial court are affirmed.

**AFFIRMED.**

---

**3.** *See* Iowa Code § 804.10.

**4.** McFarland argues private citizens have a greater capacity than a police officer to effect an arrest because their actions do not trigger constitutional restraints. This argument is without merit. It is clear from our statute which allow a citizen to make an arrest and the statutes defining the manner in which the arrest may be made, that a private citizen's rights to make an arrest are only for *public* offenses and that the manner in which they effectuate the arrest is not greater than the capacity of a public officer. *See* Iowa Code §§ 704.12, 804.9, 804.10.

McFarland's entry into the Leaches' home, if performed by a police officer and analyzed in the context of a potential violation of the Leaches' Fourth Amendment rights, would likely have been decided against the Government. This conclusion is evident in light of United States Supreme Court opinions discussing the subject:

[T]hey relied on the [arrest] warrant as legal authority to enter the home of a third person based on their belief that Ricky Lyons might be a guest there.... In absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant.... We see no reason to depart from this settled course when the search of a home is for a person rather than an object. A contrary conclusion—that the police, acting alone and in the absence of exigent circumstances, may decide when there is sufficient justification for searching the home of a third party for the subject of an arrest warrant—would create a significant potential for abuse. Armed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances.

*Steagald v. U.S.*, 451 U.S. 204, 214–15, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (citations omitted).

**5.** *See, e.g., Mishler v. State*, 660 N.E.2d 343, 345–46 (Ind.App.1996) (statute which permits citizen's arrest did not allow bondsmen to forcibly enter third party's private dwelling to arrest felon); *State v. Tapia*, 468 N.W.2d 342, 344 (Minn.App.1991) (bondsmen have statutory authority to arrest felon, but are not permitted to enter third party's dwelling with intent to arrest); *State v. Lopez*, 105 N.M. 538, 734 P.2d 778, 784 (N.M.App.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (statutory right of bondsmen to arrest felon does not empower them to enter the home of a third party and assault the occupants therein).