# IN THE COURT OF APPEALS OF IOWA

No. 13-1144
Filed July 30, 2014

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**ROBERT S. WILLIAMS,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Scott County, John D. Telleen, Judge.


      Defendant appeals his convictions for involuntary manslaughter and intimidation with a dangerous weapon. **AFFIRMED.**


      Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

      Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, Michael J. Walton, County Attorney, and Jerald Feuerbach and Amy K. Devine, Assistant County Attorneys, for appellee.


      Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Robert Williams appeals his convictions for involuntary manslaughter, pursuant to Iowa Code section 707.5(1) (2011), and intimidation with a dangerous weapons with intent, pursuant to section 708.6. On appeal, Williams maintains the district court erred when overruling his objection to a felony-murder element within the murder-in-the-first-degree instruction, as well as an aiding-and-abetting instruction. Additionally, he maintains there was insufficient evidence to support the guilty verdicts and the verdict was contrary to the weight of the evidence. Finally, he maintains he received ineffective assistance from trial counsel. We find any error in the felony-murder instruction was harmless as Williams was convicted of a lesser offense. Williams' claim regarding the aiding-and-abetting instruction is without merit. We also find substantial evidence supports both of Williams' convictions and the district court did not abuse its discretion in denying his motion for new trial. We preserve Williams' claim of ineffective assistance for possible future postconviction-relief proceedings and affirm.

**I. Background Facts and Proceedings.**

On November 14, 2012, Williams was charged with murder in the first degree, pursuant to Iowa Code section 707.1 and 702, as well as intimidation with a dangerous weapon, pursuant to section 708.6. The charges arose after two groups of men clashed in the Col Ballroom in Davenport. Minutes later outside of the ballroom, shots were fired, which injured three individuals, one fatally.

The matter was tried before a jury beginning on May 20, 2013. The jury first heard testimony from Marcia Sharkey that her son, Michael Williams,[1] died as a result of a gunshot wound sustained on the evening of May 7, 2011. She also testified that she knew Michael was a suspect in the drive-by shooting of Tresvour Robertson's mother at the time of Michael's death.

The jury next heard testimony from the State's witness, Cazmiere Graves. Graves was also charged with the murder of Michael but ultimately agreed to plead guilty to intimidation with a dangerous weapon and cooperate with law enforcement. On the day in question, Graves picked up Williams, Tresvour Robertson, and Marcus Hampton, and proceeded to go shopping. After buying new clothes, Graves testified they dropped Williams off and the other three went to a Davenport hotel to get ready for a concert. After changing clothes, the three males picked up Williams again and went to a concert at the Col Ballroom in Davenport.

At the concert, a fight broke out among a large number of people. Graves testified he was not involved in the altercation but he saw both Robertson and Hampton in the fight and saw that Hampton was "on the ground getting kicked and punched" by Michael and his friends. While the altercation was still occurring, Graves ran out and got into the white Jeep Cherokee the group had arrived in. Trell Everett, Robertson, and Williams also exited the event and got into the vehicle. According to Graves, he was driving with Williams in the front passenger seat and Everett and Robertson in the backseat. Graves drove the

---

[1] The decedent will be referred to as Michael throughout the rest of the opinion to minimize confusion since the decedent and the defendant have the same last name.

Jeep around the block looking for Hampton and pulled into a parking lot where he had to stop behind other stopped vehicles. People surrounded the vehicle, including those who had been involved in the fight inside. Graves observed Williams reach under the passenger seat, retrieve a silver handgun, and then lean across him and fire several shots outside of the driver-side window. He did not see if anyone was hit by the bullets at the time, and Williams stated he hoped no one got hit.

Graves then drove the vehicle to a home on Locust Street and placed the silver handgun in the grill. A second gun, a "long gun," was retrieved from under the backseat of the Jeep and also left at the home. After discarding the guns, the four males parked the truck and left on foot. Graves testified he later received a text message from Williams[2] he understood to mean "not to say nothing because they said somebody got hit" and that Graves agreed not to talk.

Graves was unaware Robertson's mother had been the victim of a drive-by shooting a few weeks before the incident even though he and Robertson hung out every day. He admitted he had previously told officers that Williams fired the shots through the driver-side window in the backseat and that he had made false statements to the police during prior interviews because he did not want to tell them the truth. Although Graves first said he did not see Williams place the handgun in the Jeep, when read back a prior deposition statement that he had seen the silver handgun earlier in the day, Graves admitted he had seen the gun before the shooting incident and that he had lied about it when asked earlier at trial.

---

[2] Phone records show the text from Williams stated, "B smart."

Lakeysha Howard arrived at the parking lot at approximately the same time as the shooting occurred. She saw Graves drive the white vehicle into the parking lot and then heard eight to ten shots fired. She saw Michael was hit and bleeding. Howard testified Benrecka Rogers was also with her at this time and Rogers expressed she thought Robertson may have been the shooter. Howard thought there were three people total in the vehicle but could only identify Graves.

Benrecka Rogers also testified at trial. She recalled a white vehicle, which she believed to be a Lincoln, drive up in the parking lot with Graves, wearing a baseball cap, driving the vehicle. She stated Robertson was in the front passenger seat and Hampton and Everett were in the backseat of the vehicle. She believed Robertson was the shooter and shot seven shots outside the front driver-side window by reaching from the passenger side seat. Rogers admitted she originally told police officers the driver was wearing a baseball cap but could not identify Graves as the driver. She also stated she did not know Williams at the time of her interview with the police and would not have been able to identify him by name to police. When asked, "Is the truth that you really don't remember what you saw that night," Rogers answered affirmatively.

According to Hampton, he had shopped with some of the guys earlier in the day and then had gone to the concert with them later that night. He was only in the concert for approximately five minutes before the fight started, and he "got jumped." Once he was able to get away, Hampton ran for a side exit door and exited to an outside patio with a tall fence topped with barbed wire. He traversed the fence, but there was a second fence he could not get over, so he remained in

that location until after the shooting when a police officer assisted him from his predicament. Hampton acknowledged he was currently incarcerated for possession of a firearm in an unrelated event. Hampton, who is Robertson's cousin, also contended he was not aware Robertson's mother had been the victim of a drive-by shooting before the incident at the concert. Hampton denied he had been in the Jeep at the time of the shooting.

Like Graves, Robertson was charged with murder but accepted a similar plea agreement. Robertson explained there had been verbal fights and described how things were "going back and forth" between his group of friends and the group of Michael and his friends leading up to the incident on May 7, 2011. Robertson admitted he was in the fight that broke out in the Col Ballroom. He exited the concert area when a security guard pulled a man off of him. As he exited, he saw Graves and Williams were already in the white Jeep, with Graves in the driver seat and Williams in the passenger seat. He and Everett sat in the backseat. He explained Graves drove around the block looking for Hampton and pulled into a parking lot, where he stopped. Michael walked up to the car window with other individuals who had been fighting in the concert area. Michael "grabbed in" the window, and Robertson saw Williams lean forward across Graves and then heard gunshots.

Robertson said Graves drove the car to a third party's house, at Everett's suggestion, and left the "silver and chrome 9 mm" and the second gun that had not been discharged. Robertson admitted he and Everett disposed of the gun used in the shooting in the river the next day. Robertson recalled that he was wearing a blue and white striped polo on the evening in question and Williams

was wearing a white hat. Robertson also recalled that Graves was in possession of the 9 mm gun "the whole day" on May 7, 2011, and he, Graves, and Hampton had driven to a friend's house to pick up the second gun before the concert. Prior to the Col Ballroom incident, Robertson's mother had been shot at while driving his rental car. As a result, Robertson was angry and, believing Michael was responsible, had told people he was going to kill Michael. However, Robertson had seen Michael several times since the drive-by.

Charles Bateman, Michael's brother, was also a witness to the shooting. He had been part of the fight inside of the concert and exited with his brother. He saw the white vehicle pull up and heard three or four shots after it stopped. He saw Graves driving the vehicle and saw the person in the passenger seat wearing a white hat reach for something under the seat before hearing the shots. Bateman admitted he had originally told police the four men in the vehicle were Graves, Everett, Robertson, and Hampton—not Williams. He also had heard Robertson make threats that he was going to kill Michael.

The criminologist from the Iowa Department of Criminal Investigations (DCI) testified he was able to study the seven cartridge casings the police retrieved from outside the Col Ballroom and that each was fired from the same firearm.

At the conclusion of the trial, the jury returned guilty verdicts for the lesser-included offense of involuntary manslaughter by committing a public offense and intimidation with a dangerous weapon with intent to injure or provoke fear. Williams was sentenced to a term of incarceration not to exceed five years on

count I and for a term of incarceration not to exceed ten years for count II. The sentences were ordered to run concurrently. Williams appeals.

**II. Standard of Review.**

We review challenges to jury instructions for corrections of errors at law. *State v. Heemstra*, 721 N.W.2d 549, 553 (Iowa 2006). To the extent that error is based on constitutional grounds, our review is de novo. *Id.*

We review challenges to the sufficiency of evidence for errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We review the evidence "in the light most favorable to the State, including all reasonable inferences that may be deduced from" it to determine whether the finding of guilt is supported by substantial evidence and should be upheld. *Id.* Evidence is substantial if it would convince a rational fact-finder of the defendant's guilt beyond a reasonable doubt. *Id.*

The district court has broad discretion when ruling on motions for a new trial in which the defendant alleges the verdict is contrary to the weight of the evidence, and we review its decision for an abuse of that discretion. *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). The weight-of-the-evidence standard differs from the sufficiency-of-the-evidence standard in that the district court does not view the evidence from a standpoint most favorable to the government. *State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004). Rather, the court weighs the evidence and considers the credibility of the witnesses. *Id.* While it has the discretion to grant a new trial where a verdict rendered by the jury is contrary to law or evidence, the court should do so only "carefully or sparingly." *Id.* In our review, we limit ourselves to the question of whether the trial court abused its

discretion; we do not consider the underlying question of whether the verdict is against the weight of the evidence. *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

Finally, a defendant may raise an ineffective-assistance claim on direct appeal if he has reasonable grounds to believe the record is adequate for us to address the claim on direct appeal. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). If we determine the record is adequate, we may decide the claim. *Id.* We review claims for ineffective assistance of counsel de novo. *Id.*

## III. Discussion.

### A. Felony-Murder Instruction.

Williams maintains the district court erred by overruling his objection to the inclusion of a jury instruction for murder in the first degree that contained a felony-murder provision.[3] He argues that, under *Heemstra*, 721 N.W.2d at 553,

---

[3] The instruction provided to the jury stated:
> The State must prove all of the following elements of Murder In The First Degree under Count 1:
> 1. On or about the 7th of May, 2011, the defendant shot Michael Williams.
> 2. Michael Williams died as a result of being shot.
> 3. The defendant acted with malice aforethought.
> 4. The defendant acted either:
>> a. willfully, deliberately, premeditatedly and with a specific intent to kill Michael Williams, or,
>> b. while participating in the forcible felony, Intimidation with a Dangerous Weapon with Intent as described in Instruction No. 47, or
>> c. while participating in the forcible felony of Intimidation with a Dangerous Weapon as described in Instruction No. 49.
>
> If the State has proved all of the elements, the defendant, Robert Williams, is guilty of Murder In The First Degree under Count 1. If the State has failed to prove any one of the elements, the defendant, Robert Williams, is not guilty of Murder In The First Degree under Count 1 and you will then consider the lesser-included offense of Murder in the Second Degree under Count 1 explained in Instruction No. 30.

intimidation with a dangerous weapon is not a separate and distinct offense from that of murder in the first degree, and thus it cannot serve as the predicate felony for felony-murder purposes.

Williams was not convicted of murder in the first degree. Any error in submission of a charge to a jury is harmless where the defendant is acquitted of that charge, unless the defendant can show the error infected the remaining counts. *State v. Rodriguez*, 636 N.W.2d 234, 239 n.1 (Iowa 2001). Here, Williams asserts the felony-murder instruction infected the other charges by its "inferential tendency to suggest that Mr. Williams was the shooter."

Without deciding whether intimidation with a dangerous weapon can serve as the predicate for felony-murder under these facts, we find the submission of the instruction to the jury was harmless. Upon our review of the record, there does not appear to be any evidence that was received on the felony-murder charge that was inadmissible as to the involuntary manslaughter charge, nor does Williams contend otherwise. *See State v. Sharpe*, 304 N.W.2d 220, 224 (Iowa 1981). Furthermore, "over-instructing" is generally not considered reversible error. *Id.* at 225 ("[E]rror in instructions to a greater offense or higher degree of the crime is generally considered to be harmless where accused is convicted of a lesser offense or lower degree." (quoting 75 Am. Jur. 2d *Trial* § 876, at 755 (1974)). Without more, we cannot say the inclusion of the felony-murder provision infected the other charges against Williams. The marshalling instruction for the offense of murder in the first degree simply sets out standard elements without any implication of Williams' guilt to any of the elements. Thus, the district court did not err in overruling Williams' objection.

**B. Aiding-and-Abetting Instruction.**

Williams also maintains the district court erred by overruling his objection to the aiding-and-abetting instruction.[4] He asserts that the State presented some evidence Williams was the shooter but did not present any evidence he aided or abetted another in the shooting, and thus the instruction should not have been given to the jury.

The State suggests that Williams did not offer any authority to support his position and we should consider the issue waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed a waiver of that issue."); *see also Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [appellant] might have made and then search for legal authority and comb the record for facts to support such arguments."). We agree there is scant argument or authority cited.

---

[4] The aiding-and-abetting instruction provided to the jury states:

> All persons involved in the commission of a crime, whether they directly commit the crime or knowingly "aid and abet" its commission, shall be treated in the same way.
>
> "Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting." Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."
>
> The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part he has in it, and does not depend upon the degree of another person's guilt.
>
> If you find the State has proved the defendant directly committed the crime, or knowingly "aided and abetted" other persons in the commission of the crime, then the defendant is guilty of the crime charged.

The gist of Williams' contention is that the case hinged upon him being the principal rather than an aider and abettor and there is no evidence he aided and abetted the shooter other than through accomplice testimony. Williams only relies upon *State v. Martin*, 569 N.W.2d 482, 485 (Iowa 1997), for the principle that "the validity of a verdict based on facts legally supporting one theory for conviction of a defendant does not negate the possibility of a wrongful conviction of a defendant under a theory containing legal error."

We will be equally brief. "The trial court has the duty to instruct the jury as to the law on all material issues supported by the evidence." Iowa R. Crim. P. 2.19(5)(f); Iowa R. Civ. P. 1.924. "Jury instructions are designed to explain the applicable law to the jurors so the law may be applied to the facts proven at trial." *State v. Bennett*, 503 N.W.2d 42, 45 (Iowa Ct. App. 1993). There was much conflicting testimony. There was some testimony by two individuals, who were not accomplices, that Robertson may have shot the handgun. There was also testimony that Williams had hid the handgun under the passenger seat. There was also evidence Williams arrived with Robertson, was in the same scuffle, was present at the time of the shooting, and left the scene with Robertson. There was animosity between the two groups of individuals. A material issue existed whether Williams was the shooter or aided or abetted Robertson, who had a motive due to an earlier shooting at Robertson's vehicle being driven by his mother. We find no abuse of discretion. *See State v. Countryman*, 572 N.W.2d 553, 561 (Iowa 1997) (appropriateness of jury instructions is reviewed for abuse of discretion).

**C. Sufficiency of Evidence.**

Williams maintains the State failed to provide sufficient evidence to support either of his convictions and the court erred in denying his motion for a judgment of acquittal. He claims the only evidence presented that he was the shooter, or that he aided and abetted the shooter, was testimony from witnesses who lacked credibility.[5]

When considering whether substantial evidence supports a conviction, we consider all evidence, not merely the evidence supporting the verdict. *State v. McFarland*, 598 N.W.2d 318, 320 (Iowa 1999). "Direct and circumstantial evidence are equally probative, so long as the evidence raises a fair inference of guilt and does more than create speculation, suspicion, or conjecture." *State v. Hoeck*, 547 N.W.2d 852, 859 (Iowa Ct. App. 1996). It is the task of the jury to resolve questions of fact and assess the credibility of witnesses. *State v. Mills*, 458 N.W.2d 395, 397 (Iowa Ct. App. 1990). A fact finder is not required to accept a defendant's version of the facts. *Id.* "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence." *Nitcher*, 720 N.W.2d at 556.

When reviewing the evidence in the light most favorable to the State, a jury could reasonably conclude Williams was the shooter. At trial, Graves

---

[5] In this case, to support the conviction of involuntary manslaughter by committing public offense, the State had the burden to prove Williams, as the principal actor or as the aider and abettor of another, recklessly committed assault and, in doing so, unintentionally caused the death of Michael Williams. Similarly, in order to support the conviction of intimidation with a dangerous weapon with the intent to injure or provoke fear, the State had the burden to prove Williams, as the principal actor or as the aider and abettor of another, shot or discharged a dangerous weapon at or into an assembly of people, the gun was a dangerous weapon, and at least one person actually experienced fear of serious injury and their fears were reasonable under existing circumstances.

testified he was driving the Jeep at the time of the shooting. He further testified that Williams was in the passenger seat at the time, that Williams grabbed a gun from under the car seat, and that he shot it out the driver's side window several times. Similarly, Robertson also testified that he was in the Jeep at the time of the shooting. As Graves did, Robertson testified Graves was driving and Williams was sitting in the passenger seat at the time of the shooting. Robertson testified he saw Michael Williams run up to the car window on the driver's side and Robertson ducked because he feared Michael had a gun. He then heard shots and saw Williams leaning over Graves in the driver seat before Michael fell. Robertson testified Williams was wearing a white hat. Charles Bateman, the victim's brother, corroborated Robertson's testimony insofar as he testified he saw Graves driving the Jeep and, although he could not identify the person in the passenger seat, he saw the person, who was wearing a white hat at the time, reach for something under the seat. He then heard several gunshots. Additionally, the State presented evidence of a text message from Williams to Graves approximately thirty-six hours after the shooting occurred telling him to "B smart." Graves responded some time later with a text message, asking Williams, "WATU mean" and another one stating, "Yeah, but I ain't heard shit else and you know my grandpa a bail bondsman he said they don't have any witnesses."

"A jury is free to believe or disbelieve any testimony as it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive." *Id.* We acknowledge that the testimony of Graves and Robertson was accomplice testimony and corroboration by other evidence was necessary. *See*

Iowa R. Crim. P. 2.21(3) ("A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense . . . ."). However, "[w]e have determined a small amount of corroborative evidence is all that is required." *State v. Shortridge*, 589 N.W.2d 76, 80 (Iowa Ct. App. 1998). The corroborative evidence need not confirm every material fact testified to by the accomplice. *State v. Jones*, 511 N.W.2d 400, 404 (Iowa Ct. App. 1993). The existence of corroborative evidence is a question of law for the court, but its sufficiency is a question of fact for the jury. *State v. Doss*, 355 N.W.2d 874, 880 (Iowa 1984). Furthermore, insofar as Williams attacks the credibility of Graves and Robertson as accomplices who testified against him in exchange for plea bargains, the jury was informed of the terms of the agreement and was free to decide what weight to give both Graves' and Robertson's testimony. "When the testimony is disputed or if undisputed, when different inferences may be drawn from it, the question is one of fact for the jury." *State v. Martin*, 274 N.W.2d 348, 349 (Iowa 1979).

Based on our review of the evidence in the record, we conclude the district court properly denied Williams' motion for judgment of acquittal because substantial evidence supports both of his convictions.

**D. Weight of the Evidence.**

Williams asserts the trial court abused its discretion in denying his motion for new trial. In support of his contention, Williams challenges the credibility of the State's witnesses and maintains the greater amount of credible evidence does not support that he was the shooter or that he aided and abetted the

shooter. He emphasizes the inconsistencies in the testimony and other statements made by Graves and Robertson, the only two witnesses to testify they knew it was Williams in the passenger seat of the Jeep at the time of the shooting. He also attempts to raise doubts about Hampton's testimony that he was not in the vehicle at the time of the shooting.

The district court is not to disturb the jury's verdict "against any mere doubt of its correctness." *Reeves*, 670 N.W.2d at 203. Our review of the record indicates the district court did not abuse its discretion by determining the greater weight of the evidence supports the jury verdict. There are some inconsistencies between the statements Graves and Robertson made to the police and their testimony at Williams' trial. However, both admitted they had previously been less than forthcoming with police early in the investigation, and at no point did either identify someone other than Williams as the shooter. Additionally, although Benrecka Rogers testified it was Robertson in the front passenger seat, she also testified Hampton was in the vehicle at the time, and credible testimony shows Hampton did not exit the concert with the other males and was in an enclosed area connected to the Col Ballroom during the shooting.

"[W]hen the evidence is nearly balanced, or is such that different minds would naturally and fairly come to difference conclusions thereon, [the trial court] has no right to disturb the findings of the jury . . . ." *Id.* Trial courts are to grant motions for new trial only "carefully and sparingly" so as not to "lessen the role of the jury as the principal trier of the facts." *Ellis*, 578 N.W.2d at 659. Here, we find the district court did not abuse its discretion in overruling Williams' motion for new trial.

### E. Ineffective Assistance of Counsel

Williams maintains trial counsel was ineffective for failing to request a jury instruction regarding specific intent in the aiding-and-abetting instruction. He asserts that counsel had a duty to request the additional language in the aiding-and-abetting instruction, as crimes of specific intent were at issue.[6] He maintains the issue of specific intent is so vital to the defense that its omission is a breach of duty that results in prejudice. *See State v. Goff*, 342 N.W.2d 830, 838 (Iowa 1983).

We generally preserve ineffective-assistance-of-counsel claims for postconviction-relief proceedings. *State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011).[7] "Only in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). We prefer to reserve such claims for development of the record and to allow trial counsel to defend against the charge. *Id.* If the record is inadequate to address the claim on direct appeal, we must preserve the claim for a postconviction-relief proceeding, regardless of the potential viability of the claim. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010).

---

[6] The additional paragraph Williams contends should have been included in the aiding-and-abetting instruction states:

> The crime charged requires a specific intent. Therefore, before you can find the defendant "aided and abetted" the commission of the crime, the State must prove the defendant either has such specific intent or "aided and abetted" with the knowledge the others who directly committed the crime had such specific intent. If the defendant did not have the specific intent, or knowledge the other had such specific intent, [he] [she] is not guilty.

[7] *See also* Iowa Code § 814.7(3), which provides, "If an ineffective assistance of counsel claim is raised on direct appeal from the criminal proceedings, the court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822."

Here, the record on this appeal is inadequate to address Williams' claims, as we do not know if trial counsel's failure to request the instruction was a trial strategy. Williams' defense was that he was not in the Jeep or even present. If Williams also argued the lack of specific defense, his defenses would have been inconsistent. Counsel may have made a strategic decision to forego inconsistent defenses and concluded denying Williams' involvement was most likely to be successful. *See State v. Wilkens*, 346 N.W.2d 16, 19–20 (Iowa 1984) (holding counsel was not ineffective for choosing to focus on one defense strategy). We also do not know if trial counsel conferred with Williams about such a strategy. *See id.* at 19 (noting counsel conferred with defendant before focusing on one theory for defense when finding counsel was not ineffective). Where the defense strategy is to deny any involvement in the incident, "the individual elements of the crimes become unimportant." *State v. Fountain*, 786 N.W.2d 260, 266–67 (Iowa 2010). In essence, although we conclude the district court's failure to give the additional paragraph pertaining to specific intent in the aiding and abetting instruction was in error,[8] whether defense counsel was ineffective for failing to request the additional paragraph pertaining to specific intent crimes cannot be determined on this record. We preserve for possible future postconviction-relief proceedings the issue of whether trial counsel was ineffective. *See Johnson*, 784 N.W.2d at 198 (holding a claim of ineffective assistance of counsel that

---

[8] Both crimes upon which the defendant was convicted require specific intent. The marshalling instruction for intimidation with a dangerous weapon with intent required the State to prove, "The defendant shot or discharged the dangerous weapon with the specific intent to injure or cause fear or anger in another." *See also* Iowa Code § 708.6. The marshalling instruction for involuntary manslaughter required the State to prove that "the defendant recklessly committed the crime of assault." The offense of assault is a specific intent crime. *See Fountain*, 786 N.W.2d at 266–67.

cannot be addressed on appeal because of an inadequate record must be preserved for future postconviction-relief proceedings, even if it is raised in a general or conclusory manner).

**IV. Conclusion.**

We find the inclusion of the felony-murder instruction was harmless as Williams was not convicted of murder in the first degree. Williams' claim regarding the aiding-and-abetting instruction is without merit. We also find substantial evidence supports both of Williams' convictions and the district court did not abuse its discretion in denying his motion for new trial. We preserve Williams' claim of ineffective assistance for possible future postconviction-relief proceedings and affirm.

**AFFIRMED.**